**Kenneth R. Davis, II**, OSB No. 97113
davisk@lanepowell.com
**William T. Patton**, OSB No. 97364
pattonw@lanepowell.com
**LANE POWELL PC**
601 SW Second Avenue, Suite 2100
Portland, Oregon 97204-3158
Telephone: 503.778.2100
Facsimile: 503.778.2200

**Timothy Reynolds**, *Admitted Pro Hac Vice*
timothy.reynolds@hro.com
**HOLME ROBERTS & OWEN LLP**
1700 Lincoln Street, Suite 4100
Denver, Colorado 80203
Telephone: (303) 861-7000
Facsimile: (303) 866-0200

Attorneys for Plaintiffs Atlantic Recording Corporation, Priority Records LLC, Capitol Records, Inc., UMG Recordings, Inc. and BMG Music

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| **ATLANTIC RECORDING CORPORATION**, a Delaware corporation; **PRIORITY RECORDS LLC**, a California limited liability company; **CAPITOL RECORDS, INC.**, a Delaware corporation; **UMG RECORDINGS, INC.**, a Delaware corporation; and **BMG MUSIC**, a New York general partnership,<br><br>Plaintiffs,<br><br>v.<br><br>**TANYA ANDERSEN,**<br><br>Defendant. | Case No. 3:05-CV-933-AS<br><br>Plaintiffs'<br>**RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR AN AWARD OF ATTORNEY'S FEES** |

Plaintiffs submit this Response in Opposition to Defendant's Motion for an Award of Attorney's Fees ("Motion"). For the reasons below, Defendant's Motion should be denied.

PAGE 1 -   RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR AN AWARD
OF ATTORNEY'S FEES

## I. INTRODUCTION

Defendant's Motion is long on rhetoric and short on facts and law. Defendant's Motion seeks an award of costs and fees against Plaintiffs under Section 505 of the Copyright Act. (Mot. at 1). Defendant's Motion should be denied for at least two reasons. First, Defendant is not a "prevailing party" and, thus, is not entitled to fees under Section 505. Defendant's reliance on *Capitol Records, Inc. v. Foster*, 2007 U.S. Dist. LEXIS 29131 (W.D. Okla. 2007), for authority to the contrary is misplaced as that case is distinguishable from this matter, both factually and legally. Defendant fails to acknowledge the majority of analogous cases where courts deny fee awards. Second, consideration of the factors set forth in *Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994), militates against any fee award to Defendant.

As explained below, the parties' stipulation to dismiss Plaintiffs' claims against Defendant did not result in an adjudication on the merits or a court-ordered consent decree sufficient to render Defendant a prevailing party. However, *even if* Defendant were a prevailing party, she is not entitled to fees under the *Fogerty* factors. As demonstrated below, Plaintiffs claims were neither frivolous nor objectively unreasonable because Plaintiffs had substantial evidence of infringement from a computer that accessed the Internet through Defendant's Internet account. Nor can there be any doubt regarding Plaintiffs' motivation, as Plaintiffs brought this suit in good faith to protect their copyrights. Since the outset of this matter, Plaintiffs have acted reasonably and promptly in an effort to protect their copyrights. An award of fees to Defendant would not advance the considerations of compensation and deterrence that underpin the Copyright Act. To the contrary, an award of fees to Defendant in this case could have a chilling effect on other copyright holders, and could deter them from pursuing good faith litigation to protect their legitimate copyright interests.

For all of these reasons, the Court should exercise its sound discretion and deny Defendant's motion for attorney fees.

PAGE 2 -   RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR AN AWARD
           OF ATTORNEY'S FEES

## II. BACKGROUND

Plaintiffs are recording companies that own or control exclusive rights to copyrights in sound recordings. Collectively, Plaintiffs face a massive problem of digital piracy over the Internet. Indeed, the U.S. Supreme Court has characterized the magnitude of online peer-to-peer ("P2P") piracy as "infringement on a gigantic scale." *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster Ltd,* 545 U.S. 913, 940 (2005). P2P users who disseminate (upload) and copy (download) copyrighted material without authorization of the copyright holder violate the Copyright Act. *Id.* at 918-924.

It is in this context that Plaintiffs brought the current copyright infringement action against Defendant. In their original Complaint, Plaintiffs alleged that Defendant infringed (1) their exclusive rights to copy certain of their copyrighted sound recordings by using an online media distribution system to download the copyrighted sound recordings through the Internet to her computer hard drive; and (2) their exclusive rights to distribute such copyrighted sound recordings by using an online media distribution system to distribute them over the Internet to the millions of others who use P2P networks. (Compl. ¶ 13).

Plaintiffs had substantial evidence of infringement by Defendant when they filed their lawsuit. Specifically, on May 20, 2004, Plaintiffs' investigator discovered a P2P infringer using the KaZaA file-sharing program under the name "gotenkito@KaZaA." This infringer was distributing, from a KaZaA shared folder, 1,288 digital audio files—many of them Plaintiffs' copyrighted sound recordings—to millions of other KaZaA users. The infringer connected to the Internet using the Internet Protocol ("IP") address 4.41.209.23. In response to a Rule 45 subpoena served by Plaintiffs on Verizon Internet Services, Inc. ("Verizon"), Defendant's Internet Service Provider, Verizon identified Defendant as the individual responsible for IP address 4.41.209.23 on May 20, 2004.

After learning Defendant's identity, Plaintiffs' counsel sent Defendant a letter advising that copyright infringement had been detected through her Internet account, and provided a

PAGE 3 -  RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR AN AWARD OF ATTORNEY'S FEES

telephone number and e-mail address that she could contact to discuss this matter and possibly resolve it before the commencement of litigation. (*See* Letter to Tanya Andersen dated February 2, 2005, attached hereto as Ex. A). After Plaintiffs did not hear anything from Defendant, Plaintiffs' settlement representatives contacted Defendant in the hope of engaging in settlement negotiations. The ensuing discussions failed, with Defendant providing nothing more than naked denials of liability.[1] Plaintiffs did not, however, immediately file a lawsuit. Instead, given Defendant's bald denials of liability (which denials are, of course, not uncommon in litigation), Plaintiffs asked Verizon to review its records and verify that Defendant was properly identified in response to Plaintiffs' Rule 45 subpoena. Shortly thereafter, Verizon confirmed that the proper individual had been identified, and that Defendant was responsible for IP address 4.41.209.23 on May 20, 2004. (*See* Correspondence from Verizon dated February 24, 2005, attached hereto as Ex. B). Having thus twice confirmed the identification of Defendant, and having nothing more than general denials of liability by Defendant, on June 21, 2005, Plaintiffs filed their Complaint (Doc. #1) against Defendant for copyright infringement. Following continued denials of liability by Defendant, in October 2005, Plaintiffs again asked Verizon to verify its identification of Defendant, and Verizon confirmed for a third time that Defendant was properly identified. (*See* correspondence from Verizon dated October 18, 2005, attached hereto as Ex. C). Thus, contrary to Defendant's contention, the evidence available to Plaintiffs from the outset of this matter supported their claims and the filing of their complaint.

In March 2006, at Defendant's request, Plaintiffs agreed to conduct a forensic analysis of Defendant's hard drive. The results of Plaintiffs' inspection were inconclusive, and were inconsistent with the other evidence available to Plaintiffs. Therefore, in a good faith attempt to reconcile inconsistent information, Plaintiffs engaged in further discovery. Specifically, Plaintiffs deposed individuals identified by Defendant as those who had access to her Verizon

---

[1] Plaintiffs firmly deny Defendant's counsel's characterization of these discussions. This factual disagreement, however is irrelevant here.

PAGE 4 -   RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR AN AWARD OF ATTORNEY'S FEES

account. Defendant's suggestion that Plaintiffs sought to depose anyone in this matter for a "perverse" or improper purpose is inflammatory, offensive, and untrue.[2]

Although Defendant's motion is rife with rhetoric, misrepresentations, and factual inaccuracies, most of which are irrelevant to the present motion for fees, the limited discovery in this case disproved Defendant's more egregious assertions, which Plaintiffs feel compelled to address. First, in an apparent attempt to shock the Court and mischaracterize Plaintiffs' claims, Defendant identifies by title several sound recordings contained in the shared folder at issue (Exhibit B to Doc. 1), which Defendant classifies as "gangster rap." (Mot. at 4-5). What Defendant neglects to tell the Court is that the same shared folder contains over one thousand sound recordings belonging to many different genres, including country and rock—genres that Defendant admits to listening to. (*See Excerpt from Deposition of Tanya Andersen*, attached hereto as Ex. E, at p. 25, l. 13-17). In fact, Defendant admits to being familiar with or listening to music by artists including Bryan Adams, Chris Isaak, John Cougar Mellancamp, Tom Petty, Travis Tritt, Trisha Yearwood, Everclear, Steve Miller, Alabama, Aerosmith, Phil Collins, Sting, Billy Idol, Beck, Lil Kim, Rob Zombie, Nelly, and Poison, among others. (Ex. E at p. 117, l. 13-19, p. 118, l. 12, p. 119, l. 3, p. 120, l. 25, p. 123, l. 13-21). Multiple sound recordings by each of these artists appear in the shared folder at issue in this case. (*See Exhibit B to the Complaint*).

Similarly Defendant's assertion that she alerted Plaintiffs to the identity of an individual who uses "gotenkito" as a username on the website MySpace.com is incorrect. In fact, it is Plaintiffs who, through their own diligent efforts, discovered and ultimately contacted the individual referenced by Defendant. Moreover, contrary to Defendant's repeated assertion that

---

[2] Plaintiffs specifically object to Defendant's counsel's statements with regard to Kylee Andersen that, "Calls were made to her school under false pretenses," and that Plaintiffs "threatened continued harassment of Kylee as additional leverage." (Motion at 8). These statements are simply untrue. Plaintiffs sought a limited deposition of Defendant's daughter only because Defendant herself had identified her daughter as an individual with information about the parties' claims and defenses under Rule 26(a)(1). (*See Defendant's Initial Disclosures*, attached hereto as Ex. D ).

PAGE 5 -   RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR AN AWARD
                    OF ATTORNEY'S FEES

Plaintiffs knew the person to be the real infringer but continued to pursue Defendant anyway, Plaintiffs had a conversation with this individual, during which he consistently stated that he has never visited, let alone resided in, the state of Oregon. He also patently denies engaging in the infringing activity giving rise to Plaintiffs' claims. (*See Declaration of Amy Bauer*, attached hereto as Ex. F).

Additionally, it is worth noting that KaZaA usernames are not exclusive. In other words, an unlimited number of users can create independent accounts and shared folders under the same user, or screen name. Plaintiffs have learned that "gotenkito" is not a unique username, but rather is quite popular—particularly among fans of an anime program called Dragonball Z. Interestingly, in her deposition, Lindsay Andersen, half-sister to Defendant's daughter Kylee Andersen, testified that Kylee is a fan of Dragonball Z. (*See Excerpt from Deposition of Lindsay Andersen*, attached hereto as Ex. G, at p. 46, l. 15 – p. 47, l. 12). Specifically, with regarding to Dragonball Z, Lindsay Andersen testified that Kylee, "talks about it a lot," and "really likes it." *(Id.* at p. 46, l. 10, 12).

Finally, Defendant claimed early and often in this case that her friend, Ania Bruns, installed KaZaA-Lite software on her computer. At her deposition, however, Ania Bruns flatly refused to confirm Defendant's story. (*See Excerpt from Deposition of Ania Bruns*, attached hereto as Exhibit H, at p. 32, l. 14 – p. 33, l. 19). In fact, Ms. Bruns denied ever having installed Kazaa Lite on any computer. (*See id*. at p. 33, l. 17-19).

The bottom line is that, after limited but reasonable discovery, Plaintiffs have been unable to reconcile the inconsistent evidence in this case. They detected infringement through a computer attached to Defendant's Internet account. Verizon identified the account as belonging to Defendant, and then re-confirmed its identification of Defendant twice. Many of the recordings in the shared folder are consistent with Defendant's musical taste. There is a connection between the user name at issue, Dragonball Z, and Defendant's daughter who, according to at least one witness, is a big fan of Dragonball Z. Plaintiffs have found no one else

PAGE 6 -   RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR AN AWARD OF ATTORNEY'S FEES

who might have used the computer at issue or who committed the infringements at issue. On the other hand, the computer inspection was inconsistent and inconclusive, and the depositions did not help resolve these inconsistencies. After limited discovery, Plaintiffs agreed, in good faith, to dismiss Defendant with prejudice. On these unusual facts, Plaintiffs respectfully submit that their conduct was warranted and appropriate, and, for the reasons set forth below, Defendant's request for fees should be denied.

### III.  ARGUMENT

**A.    Defendant Is Not a 'Prevailing Party' Under the Copyright Act.**

The United States Supreme Court has determined that a "prevailing party" can only be one who secured a "judgment on the merits . . . or obtained a court-ordered consent decree." *Buckhannon Bd. & Care Home, Inc. v. West Va. Dept. of Health & Human Servs.*, 532 U.S. 598, 606 (2001); *see also Perez-Arellano v. Smith*, 279 F.3d 791, 793-94 (9th Cir. 2002) (applying *Buckhannon* to determine prevailing party status in an Equal Access to Justice Act case).[3] The Supreme Court found that a prevailing party is one who "has been awarded *some* relief by the court." *Buckhannon*, 532 U.S. at 603. Here, Plaintiffs' claims were dismissed, not upon any relief ordered by the Court, but rather, by joint stipulation of the parties. Therefore, no relief was provided to Defendant by the Court, and she is not a prevailing party.

*Shloss v. Sweeney* is substantially on point. No. C 06-03718JW, 2007 U.S. Dist. LEXIS 41847, *7 (N.D. Cal. May 30, 2007) (attached hereto as Ex. I). In *Schloss*, the court found that a "[d]efendants' contention that they are the 'prevailing party' because Plaintiff agreed to dismiss . . . claims with prejudice is untenable." The *Shloss* court recognized the slippery slope that a contrary finding would breed. Specifically, a finding of prevailing party in these circumstances would "mean that any party who secures a dismissal with prejudice of the claims

---

[3] In *Buckhannon*, the Supreme Court made it clear that the term "prevailing party" should be interpreted consistently across federal statutes that authorize fees to a prevailing party. *See Buckhannon*, 532 U.S. at 602-03 & n.4; *Berry v. Hawaiian Express Serv.*, 2007 U.S. Dist. LEXIS 15077, at *61-64 (D. Haw. March 2, 2007) (applying *Buckhannon* to a request for attorney fees under Section 505 of the Copyright Act).

PAGE 7 -   RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR AN AWARD OF ATTORNEY'S FEES

against them . . . is actually a prevailing party (and potentially entitled to an award of attorney fees.)" *Id.* at *7-8. The court refused to adopt such a rule.

Here, for the same reasons, Defendant cannot be said to be a prevailing party. Plaintiffs' claims were dismissed by agreement of the parties resulting from a good faith overture on the part of Plaintiffs who continue to investigate the infringement of the copyrights at issue. On these facts, there was no judgment on the merits or court-ordered decree. As such, Defendant was not a prevailing party under the Copyright Act, and is not entitled to fees under Section 505.

Defendant's Motion relies extensively on *Foster* to support her prevailing party argument. 2007 U.S. Dist. LEXIS 29131 (W.D. Okla. 2007). *Foster*, however, has no application here because this case is nothing like *Foster*. First, the dismissal in *Foster* was granted upon a motion by the plaintiffs, after the court reviewed extensive briefing on the merits of the parties' claims. Conversely, here, the dismissal was agreed to by the parties, and did not require the Court to consider the merits of the underlying claims. Second, a reading of the *Foster* decision makes clear that the court's primary reason for awarding fees was its belief that the plaintiffs in that case had not offered evidence to substantiate their claim of secondary liability against the defendant (even though the dismissal was at the pleading stage). *Id.* at 5. No such concern exists in this case because Plaintiffs never brought a claim of secondary liability against Defendant. Finally, in *Foster*, the plaintiffs ultimately determined that the defendant's daughter, not the defendant, was the direct infringer. Here, the evidence is inconsistent, but there remains substantial evidence that Defendant *was* the direct infringer. For all of these reasons, *Foster* provides no basis for an award of fees to Defendant in this case.[4]

Indeed, Defendant does not refer to, or describe, many of the decisions in these types of cases where fees were denied. In *Virgin Records Am., Inc. v. Thompson*, No. SA-06-CA-592-

---

[4] In addition to being easily distinguished from the facts of this case, Plaintiffs also respectfully submit that the *Foster* court's assumption that there was no factual basis for the Plaintiffs' secondary liability claims in that case is not supported by the record in that case and is also inconsistent with earlier findings by the *Foster* court. *See Foster* at *11, 14 (finding that the allegations in Plaintiffs' Amended Complaint were not frivolous or objectively unreasonable).

PAGE 8 -   RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR AN AWARD OF ATTORNEY'S FEES

OG, (2006), while the court did not reach the issue of whether the defendant who had been dismissed with prejudice was a prevailing party, it rejected his request for fees. *Id.* (finding that "Plaintiffs brought an objectively reasonable suit to protect their copyrights . . . plaintiffs have [not] acted in bad faith or maliciously so that they should be deterred from the same conduct in the future") (Attached hereto as Ex. J). Similarly, in *Priority Records L.L.C. v. Chan*, 2005 WL 2277107 (E.D. Mich. 2005), the court found that "even if the dismissal [with prejudice] were considered an adjudication on the merits" an award of fees was not proper because. "Plaintiffs [took] reasonable steps to try to prosecute [the] case." *Id*. at *2 (attached hereto as Ex. K).

For all of these reasons, Defendant is not a prevailing party and, therefore, is not eligible for fees under Section 505 of the Copyright Act.

**B.    Not Only Is Defendant Not Eligible for Fees as a Prevailing Party, But a Review of the *Fogerty* Factors Demonstrates That Defendant is not Entitled to Fees Under Section 505 in Any Event**.

The Copyright Act provides that a prevailing party *may* be awarded attorney fees. 17 U.S.C. § 505. A prevailing party is not automatically awarded fees, however, because fees are to be awarded only as a matter of the court's discretion, and only when equity requires such an award. *Fogerty v. Fantasy Inc.*, 510 U.S. 517, 533-34 (1994). In *Fogerty*, the Supreme Court outlined four non-exclusive factors to guide the district courts in determining whether to award attorney fees: (1) frivolousness, (2) the parties' motivation, (3) objective unreasonableness, and (4) the need in particular circumstances to advance considerations of compensation and deterrence. *Fogerty*, 510 U.S. at 534, n.19; *see also Smith v. Jackson*, 84 F.3d 1213, 1221 (9th Cir. 1996) (applying the *Fogerty* factors and denying attorney fees to a prevailing party). However, "there is no precise rule or formula for [determining whether a fee award is appropriate], and equitable discretion should be exercised 'in light of the considerations we have identified.'" *Fogerty*, 510 U.S. at 534. The overriding consideration is whether such an award would further the purposes of the Copyright Act. *Bridgeport Music, Inc. v. Rhyme Syndicate Music*, 376 F.3d 615, 626 (6th Cir. 2004).

PAGE 9 -    RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR AN AWARD OF ATTORNEY'S FEES

Applying the *Fogerty* framework here, Defendant's request for fees should be denied because (1) Plaintiffs' claim was neither frivolous nor objectively unreasonable in either its factual allegations or its legal underpinnings; (2) there is no evidence to suggest any improper motivation for Plaintiffs' bringing the lawsuit, and (3) there is no need to deter Plaintiffs good faith efforts to protect their valid copyrights or to compensate Defendant here.  Accordingly the Court should deny Defendant's request for an award of fees under § 505 of the Copyright Act.

**1.     Defendant is not entitled to attorney fees because Plaintiffs' lawsuit was neither frivolous nor objectively unreasonable.**  Defendant's demand for fees fails the first and third of the *Fogerty* factors because Plaintiffs' lawsuit was neither frivolous nor objectively unreasonable.  At the time that this action was filed, Plaintiffs had substantial reason to believe that Defendant engaged in the acts of infringement at issue.  *See Brewer-Giorgio v. Bergman*, 985 F. Supp. 1478, 1483 (N.D. Ga. 1997) ("At the time that Plaintiffs filed the action, the court believes that it was clearly reasonable for Plaintiffs to think that Defendants' conduct may have violated the Copyright Act by copying from Plaintiffs' original books."); *Garnier v. Andin Int'l, Inc.*, 884 F. Supp. 58, 62 (D.R.I. 1995) (holding that the "reasonableness" of a plaintiff's position is determined as of the time the litigation is initiated).

Specifically, as discussed above, Plaintiffs discovered substantial copyright infringement by a P2P infringer using the KaZaA file-sharing program.  Subsequently, pursuant to a federal court subpoena served by Plaintiffs, Verizon advised Plaintiffs that the infringer was using an Internet account for which Defendant was responsible.  Plaintiffs verified this presumptively accurate identification not once, but twice.  Plaintiffs respectfully submit that these facts provided more than ample basis for the allegations in Plaintiffs' Complaint against Defendant, and multiple federal courts have so held in other cases brought by record companies that are

factually and legally similar to the present case.[5] *See, e.g., Atlantic Recording Corp. v. Heslep*, No. 4:06-cv-132-Y, slip op. at 11 (N.D. Tex. 2007) (finding that, despite Defendant's sworn denial of responsibility, information indicating that the IP address used to access the internet was traced to an ISP account controlled by the defendant was sufficient evidentiary support for plaintiffs' claim of copyright infringement) (attached hereto as Ex. L); *Thompson*, slip op. at 2 (2006) (holding that the plaintiffs' lawsuit was neither frivolous nor prosecuted with malevolent intent because the plaintiffs had discovered "substantial copyright infringement of their songs by a file-sharing program attached to an internet account registered to [defendant]"); *Virgin Records Am., Inc. v. Darwin*, 2006 U.S. Dist. LEXIS 96069, at *9 (C.D. Cal. 2006) ("[I]t was not frivolous for plaintiffs to initiate a lawsuit against defendant, whom Cox identified.") (attached hereto as Ex. N); *Capitol Records, Inc. v. O'Leary*, 2006 U.S. Dist. LEXIS 5115, at *4 (C.D. Cal. 2006) (holding that "Plaintiffs were reasonable in bringing an action against [defendant] because the Internet account used to commit the alleged infringement was registered in her name only.") (attached hereto as Ex. O); *Chan*, 2005 WL 2277107, at *2 (holding that plaintiffs' lawsuit against "the registered user for the IP address from which the allegedly improper

---

[5] Defendant spends significant time referencing irrelevant case law for her contention that the investigation preceding the filing of Plaintiffs' claims is somehow insufficient. (Mot. at 6-8). Specifically, Gary Millen's testimony cited in Defendant's Motion (Mot. at 7) consists of opinions that he offered in a different proceeding, in a different country, almost three years ago, none of which have anything to do with the present case. Plaintiffs have no idea, for example, what procedures, if any, were used to verify sound recordings in Millen's case. Here, Plaintiffs downloaded the sound recordings to confirm that Defendant was distributing, and they provided Defendant with copies of the infringing files. (*See* Ex. F at ¶ 11). In a factually similar case, *Interscope Records, et al. v. Leadbetter*, the court struck Defendant's reference to and exhibits supporting the same testimony of Gary Millen being offered here on the grounds that "Mr. Millin is neither a fact witness nor has he been qualified as an expert in this case." No. C05-1149-MJP-RSL, slip op. at 16, n8 (D. Wash. April 23, 2007) (attached hereto as Ex. M). The same is true in the present case, and Plaintiffs respectfully request that Defendant's references be disregarded. Defendant likewise mischaracterizes the holding in *Brein et al. v. UPC Nederland B.V. et al.* (attached hereto as Ex. P). In *Brein*, the Dutch Court stated that because it could not find that the processing of personal data in collecting IP addresses had met standards set by European Union data protection laws, the internet service providers should not be compelled to disclose the personal data of its users. The court's holding was based solely on the fact that MediaSentry is based in the United States and did not benefit from the Safe Harbor of EU data protection law. The decision in no way found that MediaSentry's investigative techniques were improper or unreliable, as Defendant falsely contends.

PAGE 11 -  RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR AN AWARD OF ATTORNEY'S FEES

downloading and file sharing occurred" was proper). In fact, in *Foster* as well the court stated that Plaintiffs' claims, including those for secondary infringement, were neither frivolous nor objectively unreasonable. 2007 U.S. Dist. LEXIS 29131, slip op. at 5.

Furthermore, the litigation tactics employed by both parties are relevant to determining objective unreasonableness under *Fogerty*. *See Bridgeport Music*, 376 F.3d at 627-28. In this case, Plaintiffs made clear to Defendant from the outset that they were interested only in suing the proper party, and Plaintiffs repeatedly communicated their willingness to dismiss Defendant if Defendant was not the right party. Defendant, however, steadfastly refused to cooperate with Plaintiffs, offering nothing but bare denials, and otherwise not communicating with Plaintiffs. Moreover, as stated previously, Plaintiffs independently sought confirmation of Verizon's identification of Defendant on two separate occasions, incurred great expense to inspect Defendant's computer hard drive at her request in the early stages of this litigation, propounded minimal written discovery, and took the depositions of those individuals identified by Defendant as possible witnesses. Despite these extensive efforts by Plaintiffs, they have yet to reconcile the inconsistencies presented by the evidence in this case and, on that basis, they agreed to dismiss Defendant and pursue other avenues. Plaintiffs respectfully submit that these facts demonstrate that their litigation tactics were at all times reasonable and undertaken in good faith.

Defendant's litigation tactics, however, have unnecessarily expanded this litigation and increased costs. Defendant has insisted on pursuing, not once, but twice, nine baseless counterclaims against Plaintiffs. (Doc. Nos. 7 and 112). In addition, after initially requesting that Plaintiffs inspect her computer, Defendant unnecessarily fought Plaintiffs' request for production and proposed protective order, resulting in two motions to compel filed by Plaintiffs (Doc. Nos. 36 and 43) which ultimately resulting in production of Defendant's computer subject to the protective order proposed by Plaintiffs. (Doc. Nos. 42 and 50). Defendant also filed a baseless motion for sanctions against Plaintiffs that was ultimately denied by this Court. (Doc. Nos. 71 and 78). Lastly, rather than cooperating with Plaintiffs in their effort to take her

PAGE 12 -  RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR AN AWARD OF ATTORNEY'S FEES

deposition, Defendant opposed her deposition vigorously and did not cooperate until ordered to do so by this Court (Doc. No. 92) in response to Plaintiffs' second motion to compel (*See* Doc. Nos. 66 and 84). Even then, Defendant expended more time and money seeking to limit her deposition. (Doc. No. 100). Indeed, Defendant's litigation tactics from the outset have been unreasonable, combative, and improperly aimed at building the motion for fees now before the Court.

Finally, although Defendant repeatedly argues that Plaintiffs were provided information early in the litigation that exonerated her, that is simply not the case. The fact is that, despite their repeated requests, Plaintiffs received nothing from Defendant other than general, unverified denials of liability. Assuredly, a copyright plaintiff should not be required to choose between abandoning its claim of infringement or facing a fees motion every time it receives a bald, unverified denial of responsibility.

For all of these reasons, Plaintiffs respectfully submit that the circumstances of this case demonstrate that Plaintiffs' actions were neither frivolous nor objectively unreasonable. Accordingly, these *Fogerty* factors militate against any award of fees to Defendant.

**2.    Defendant should not be awarded attorney fees because Plaintiffs reasonably acted with the purpose of protecting their copyrights**. Consideration of the second *Fogerty* factor—the plaintiff's motivation for filing the lawsuit—further demonstrates that an award of attorney fees would be inappropriate here. Plaintiffs brought this action in an effort to protect their copyrights. *See Heslep*, No. 4:06-cv-132-Y, slip op. at 11 (holding that Plaintiffs "brought this lawsuit not for the purposes of harassment or to extort [the defendant] . . . , but, rather, to protect their . . . copyrights from infringement and to help . . . deter future infringement"). Indeed, it is not disputed that substantial copyright infringement occurred here. Moreover, Plaintiffs' case is entirely "faithful to the purposes of the Copyright Act." *See Kebodeaux v. Schwegmann Giant Super Markets, Inc.*, 33 U.S.P.Q.2d 1223, 1224 (E.D. La. 1994) (holding that it would be inconsistent with the purposes of the Copyright Act to "deter plaintiffs . . . from

PAGE 13 -   RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR AN AWARD OF ATTORNEY'S FEES

bringing suits when they have a reason to believe, in good faith, that their copyrights have been infringed").

The U.S. Supreme Court has characterized online piracy through P2P networks as copyright infringement on "a gigantic scale." *See Grokster*, 545 U.S. at 940; *see also BMG Music v. Gonzalez*, 430 F.3d 888, 890 (7th Cir. 2005) (noting that an illegally downloaded sound recording "is a direct substitute for a purchased copy"); *Heslep*, No. 4:06-cv-132-Y, slip op. at 11 (stating that "Plaintiffs face a formidable task in trying to police the internet in an effort to reduce or put a stop to the online piracy of their copyrights."). Defendant can present no evidence to suggest that Plaintiffs had any motivation for bringing this lawsuit other than to protect their copyrights, because there is no such evidence. Plaintiffs' motivation in bringing this lawsuit was proper, and to award attorney fees to Defendant on these facts would run counter to the settled policy of encouraging injured copyright holders to act reasonably to protect their interests. *See Mitek Holdings, Inc. v. Arce Eng'g Co.*, 198 F.3d 840, 842-43 (11th Cir. 1999).

**3.    Defendant is not entitled to attorney fees because such an award would not promote the purposes of the Copyright Act.** The final *Fogerty* factor—whether an award of attorney fees is necessary to, or would further, the interests of compensation or deterrence—likewise favors Plaintiffs. The "principal purpose of the [Copyright Act] is to encourage the origination of creative works by attaching enforceable property rights to them." *Diamond v. Am-Law Publ'g Corp.*, 745 F.2d 142, 147 (2d Cir. 1984). The imposition of a fee award against a copyright holder with an objectively reasonable claim will not promote the purposes of the Copyright Act. *See Mitek Holdings, Inc.*, 198 F.3d at 842-43 (reversing award of fees to defendant and holding that "[t]he touchstone of attorney's fees under § 505 is whether imposition of attorney's fees will further the interests of the Copyright Act, i.e., by encouraging the raising of objectively reasonable claims and defenses") (quoting *Fogerty*, 510 U.S. at 526-27). The copyright act does not warrant an award of fees every time a copyright defendant obtains a dismissal. Nothing in the Act or applicable case law would support such a conclusion. On the

contrary, where the evidence of infringement is undisputed, but the facts are inconclusive as to the Defendant's liability, no fees should be awarded. To do otherwise would chill Plaintiffs from protecting valid copyrights

In this case, Plaintiffs brought objectively reasonable claims in the interest of protecting valid copyrights. As it turned out, the evidence uncovered in discovery proved inconsistent and inconclusive. Specifically, as noted above, there was substantial evidence implicating Defendant, including three confirmations from her internet service provider. On the other hand, there was also evidence that was inconsistent with what Plaintiffs' investigators found, including Defendant's testimony that she was not responsible. The inconsistencies among the evidence has not been explained. In these unusual circumstances, there is no need to deter Plaintiffs' conduct. Nor is there any basis for compensating Defendant for her conduct that intentionally and unnecessarily prolonged these proceedings for the purpose of building a motion for fees.

## IV. CONCLUSION

For the above reasons, Plaintiffs respectfully request that this Court deny Defendant's motion for attorney fees.

DATED: August 10, 2007

        LANE POWELL PC

        By <u>s/ William T. Patton</u>
           Kenneth R. Davis, II, OSB No. 97113
           William T. Patton, OSB No. 97364
           (503) 778-2100

        Tim Reynolds, *Admitted Pro Hac Vice*
        HOLME ROBERTS & OWEN LLP
        1700 Lincoln Street, Suite 4100
        Denver, Colorado  80203
        Telephone:  303.861.7000
        Facsimile:  303.866.0200

        Attorneys for Plaintiffs

PAGE 15 -  RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR AN AWARD OF ATTORNEY'S FEES