LAW OFFICES

# MITCHELL SILBERBERG & KNUPP LLP

A PARTNERSHIP INCLUDING PROFESSIONAL CORPORATIONS

TRIDENT CENTER
11377 WEST OLYMPIC BOULEVARD
LOS ANGELES, CALIFORNIA 90064-1683

(310) 235-2442

February 2, 2005

TANYA ANDERSEN
8030 S.W. Avery Street
Tualatin, OR 97062

> **Re:** **Caroline Records, et al. v. DOES 1-175**
> **United States District Court for the District of Columbia**
> **Case No. 1:04-CV-02028**

Dear Ms. Andersen:

This letter serves to inform you that you have been sued by a number of record companies for copyright infringement. You are being sued because we have obtained evidence that you have made copyrighted sound recordings owned by the record company plaintiffs available for mass distribution over a peer-to-peer network. This law firm is counsel to the record company plaintiffs.

Although you have already been sued, you have not yet been named as a defendant. At the time of filing the lawsuit, we knew only the Internet Protocol ("IP") address associated with your Internet usage. Therefore, you were sued anonymously as a "Doe Defendant" in the above-referenced lawsuit. Pursuant to a Court Order issued by the judge in that case, your Internet Service Provider ("ISP") provided us with your identifying information, including your name and address. By law, we may use that information to identify you by name in a lawsuit and serve you with a copy of the new complaint. We are writing in advance of serving a new complaint, in the event that you have an interest in resolving these claims.

In deciding whether you wish to discuss this matter, here are some things we believe you should consider:

- Making copyrighted recordings available for others to download by putting those recordings into your so-called "shared" folder is copyright infringement under the Copyright Act, as is the unauthorized downloading of copyrighted recordings. Ignorance of the law is not a defense. What that means is that it does not matter whether you knew it was illegal. Whether or not you intended to infringe does not matter. If you violate the record companies' copyrights you will be held liable for damages as a result.

- The Copyright Act imposes a range of statutory damages for copyright infringement. The minimum damages under the law is $750 for *each* copyrighted recording that has



Exhibit A
Page 1 of 3

MITCHELL SILBERBERG & KNUPP LLP
Page 2

been infringed ("shared"). If a court determines you acted "willfully," the maximum damage award can be even more. In addition to damages, you may also be responsible for paying the legal fees we incur in order to pursue these claims, and are subject to having an injunction entered against you prohibiting you from further infringing activity.

- If you choose not to settle the case, then we will name you as a defendant and serve you with a copy of the complaint. You must file a response to the complaint within 20 days of being served. Failure to respond to the complaint can result in a default judgment being entered against you. That default will include the entry of a monetary judgment and an injunction.

- Now that you are aware that a lawsuit has been filed against you, there is an obligation for you to preserve evidence that relates to the claims against you. In this case, that means, at a minimum, the entire library of recordings that you have made available for distribution as well as any recordings you have downloaded, need to be maintained as evidence. The evidence necessary for the record companies to prevail in this action has already been secured. Nevertheless, any destruction of evidence would be a serious matter.

**WE ARE NOT YOUR LAWYERS, NOR ARE WE GIVING YOU LEGAL ADVICE. WE URGE YOU TO CONSULT WITH AN ATTORNEY IMMEDIATELY TO ADVISE YOU ON YOUR RIGHTS AND RESPONSIBILITIES.**

The record companies take copyright infringement very seriously, and for good reason. Copyright theft is not a victimless crime. People spend countless hours working hard to create music – not just recording artists and songwriters, but also session players, backup singers, sound engineers and other technicians. In addition, the music industry employs thousands of other people, such as CD-plant workers, warehouse personnel, record store clerks, and developers of legitimate online music services. They all depend on the sale of recordings to earn a living. So do record companies, which routinely invest millions of dollars to discover and sign promising artists, and then to produce and market their recordings. In addition, piracy eats away at the investment dollars available to fund new music and, in effect, erodes the future of music. That means that a creatively gifted, but commercially risky, artist may not get signed. A talented songwriter may be forced to make songwriting a hobby instead of a career. In the end, the music suffers, along with everyone who cares about it – from the people who make it to the consumers who enjoy it.

If you have an interest in discussing this matter, including settlement, the record companies request, with our consent, that you contact their representatives on or before ten (10) calendar days from the date of this letter. If you do not contact them within that time, the litigation will continue.

MITCHELL SILBERBERG & KNUPP LLP
Page 3


You or your attorney may contact the record companies' representatives by phone at (206) 973-4145, by facsimile at (206) 242-0905, or by e-mail at info@settlementsupportcenter.com.  If you are under 18, your attorney (or your parent or other guardian) must be present during any discussions.

We encourage you to consult with an attorney immediately to advise you on your rights and responsibilities, since we are obviously not your lawyers.


Sincerely,


Yvette Molinaro
of
MITCHELL SILBERBERG & KNUPP LLP

**Parker, Linda (SHB)**

| | |
|---|---|
| **From:** | Molinaro, Yvette |
| **Sent:** | Thursday, February 24, 2005 11:47 AM |
| **To:** | |
| **Subject:** | |

```
-----Original Message-----
From: patrick.m.flaherty@verizon.com
[mailto:patrick.m.flaherty@verizon.com]
Sent: Thursday, February 24, 2005 6:33 AM
To: Molinaro, Yvette
Cc: thomas.m.dailey@verizon.com
Subject: Re: RIAA - claims of mis-identification by subscribers
```

Yvette:

Both TANYA ANDERSEN and          were correctly identified.

If you have any questions, please contact me.

Regards,

Patrick

```
Patrick M. Flaherty
Staff Counsel - Trademarks & Copyrights
Verizon Corporate Services Corp.
1515 North Court House Road, Suite 500
Arlington, Virginia 22201
tel: 703 351 3020
fax: 703 351 3669
email: patrick.m.flaherty@verizon.com
```

```
        "Molinaro,
        Yvette"
        <YXM@msk.com>                                    To
                                  Patrick M.
        02/14/2005 07:27          Flaherty/EMPL/NY/Verizon@VZNotes
        PM                                                cc
                                  thomas.m.dailey@vol.verizon.com
                                                    Subject
                                  RIAA - claims of mis-identification
                                  by subscribers
```

1


Exhibit B
Page 1 of 1

**Amy Bauer**

| | |
|---|---|
| **From:** | patrick.m.flaherty@verizon.com |
| **Sent:** | Tuesday, October 18, 2005 12:03 PM |
| **To:** | Miller, Therese P. (SHB) |
| **Cc:** | thomas.m.dailey@verizon.com; McCracken, Tracy D. (SHB) |
| **Subject:** | Re: RIAA - Request to Confirm Subscriber Identity (Andersen, Tanya) |



Verizon
\ndersen.pdf (18 KB

Therese:

Our records show that the subscriber was correctly identified.

Patrick

Patrick M. Flaherty
Staff Counsel - Trademarks & Copyrights
Verizon Corporate Services Corp.
1515 North Court House Road, Suite 500
Arlington, Virginia 22201
tel: 703 351 3020
fax: 703 351 3669
email: patrick.m.flaherty@verizon.com


| | | |
|---|---|---|
| "Miller, Therese P. (SHB)" <TPMILLER@shb.com> | **To** | |
| 10/17/2005 05:00 PM | Patrick M. Flaherty/EMPL/NY/Verizon@VZNotes | |
| | **cc** | |
| | "McCracken, Tracy D. (SHB)" <TMCCRACKEN@shb.com>, Thomas M. Dailey/EMPL/VA/Verizon@VZNotes | |
| | **Subject** | |
| | RIAA - Request to Confirm Subscriber Identity (Andersen, Tanya) | |



EXHIBIT

Exhibit C
Page 1 of 1

1  **Lory R. Lybeck**
   Lybeck Murphy, LLP
2  7525 SE 24th Street, Ste. 500
   Mercer Island, WA  98040-2334
3  206-230-4255 /phone
   206-230-7791 /fax
4  Lybeck – lrl@lybeckmurphy.com
   **Lybeck – OSB #83276**
5  Attorney for defendant

6

7

8
                    UNITED STATES DISTRICT COURT
9                   DISTRICT OF OREGON AT PORTLAND

10 Atlantic Recording Corporation, a          )    No. CV 05-933 AS
   Delaware corporation; Priority Records,    )
11 LLC, a California limited liability        )    Defendant's Rule 26(a)(1) Initial
   company; Capitol Records, Inc., a          )    Disclosures
12 Delaware corporation; UMG Recordings,      )
   Inc., a Delaware corporation; and BMG      )
13 Music, a New York general partnership,     )
                                              )
14              Plaintiffs,                    )
                                              )
15        v.                                  )
                                              )
16 Tanya Andersen,                            )
                                              )
17              Defendant.                     )
                                              )
18
         Defendant Tanya Andersen, by and through her attorneys Lybeck Murphy, LLP, make
19
   the following disclosures pursuant to Fed. R. Civ. Pro. 26(a)(1):
20
21       1.      The following may have information in support of defenses and counterclaims

22 raised in this action and may be called to testify:

23              a.  Tanya Andersen and her nine year-old daughter, Kylee Andersen

24              b.  Persons named or otherwise identified in lawsuits brought by record companies
25
                    who have been mistakenly identified as engaging in file sharing activities.
26
                c.  Gary Millin, Tom Mizzoni, Mark Weaver and other representatives from

---

Defendant's Rule 26(a)(1) Initial Disclosures - 1
andersen\pleadings\discovery\init.disc



Lybeck♦Murphy LLP
7525 SE 24th Street, Ste. 500
Mercer Island, WA  98040-2
206-230-4255  Fax 206-230-



Exhibit D
Page 1 of 5

1        MediaSentry, Inc and RIAA may be called to testify regarding their

2        investigative practices, policies, technology, software, MediaDecoy, spoofing,

3        and other issues including but not limited to programs utilized to enter networks

4

5        and computer systems, retention and destruction of information, and verification

6        processes.

7     d.  Representatives from RIAA may be called to testify regarding their investigative

8        practices, and other issues including but not limited to programs utilized to enter

9        networks and computer systems, retention and destruction of information, and

10       verification processes.

11

12    e.  A representative of Verizon may be asked to testify about measures taken to

13       protect Tanya from viruses and spoofing, protection of her IP address, record

14       keeping, and enforcement of its service contract.

15    f.  Representatives of Settlement Support Center, including but not limited to Mark

16       Eilers, may be called to testify regarding representations made to defendant

17       during the course of this and other file sharing lawsuits, investigation process,

18       document retention and destruction and other matters at issue in this lawsuit.

19

20    g.  Yvette Molinaro, or another similarly situated person at Mitchell Silverberg &

21       Knupp, may be called to testify regarding the investigation process, document

22       retention and destruction, representations made to defendant, and other matters

23       at issue in this lawsuit.

24    h.  Representatives of KaZaA and other online peer-2-peer file sharing operations

25       may be called to testify regarding peer-2-peer programs, technology, online

26       safety, spoofing, copyright and/or patent infringement and electronic trespass by

Defendant's Rule 26(a)(1) Initial Disclosures - 2
andersen\pleadings\discovery\init.disc

Lybeck◆Murphy LLP
7525 SE 24th Street, Ste. 500
Mercer Island, WA  98040-2334
206-230-4255   Fax 206-230-7791

Exhibit D
Page 2 of 5

1    plaintiffs and plaintiffs' agents.

2        i.    Representatives of plaintiffs may be called to testify to allegations in their

3             complaint.

4

Ms. Andersen reserves the right to call witnesses subsequently identified by plaintiffs or

5

6  otherwise identified during the course of discovery.

7      2.     Tanya Andersen may use the following documents and things to support her

8  defenses in this lawsuit:

9        a.  News reports, articles, public service announcements, and other print media

10            regarding issues, including but not limited to, the misidentification of

11

12            persons as defendants in file sharing lawsuits, the use of devices, techniques

13            and programs to enter networks and computer systems, viruses and spoofing,

14            and other issues that may become relevant as discovery progresses.

15        b.  Screen shots that plaintiffs incorrectly ascribe to Ms. Andersen.

16        c.  Copies of any recordings that plaintiffs claim to have in their possession,

17            which plaintiffs wrongly ascribe to Ms. Andersen.

18

19        d.  Copies of all investigative materials, which plaintiffs have not provided.

20        e.  Affidavits, declarations and transcripts of sworn testimony provided by

21            representatives of MediaSentry, RIAA and other related organizations or

22            people relating to any issues in this lawsuit.

23        f.  Documents, manuals, and software from MediaSentry.  Particularly, those

24            manuals used as evidence in the Australian KaZaA lawsuit in which Tom

25            Mizzone provided evidence.

26

      3.     Tanya Andersen intends to seek all attorneys' fees and costs as allowed by the

Defendant's Rule 26(a)(1) Initial Disclosures - 3
andersen\pleadings\discovery\init.disc

Lybeck❖Murphy LLP
7525 SE 24th Street, Ste. 500
Mercer Island, WA 98040-2334
206-230-4255  Fax 206-230-7791

Exhibit D
Page 3 of 5

1    Copyright Act. Ms. Andersen reserves the right to assert counterclaims.

2        4.    Not applicable.

3

4
    Tanya Andersen makes these disclosures based upon information that is currently
5
known to her and has been made reasonably available to her. Because plaintiffs have failed to
6
7    provide its investigative information, this disclosure is necessarily potentially incomplete. Ms.

8    Andersen reserves the right to supplement this disclosure upon receipt of all documents in

9    plaintiffs' possession, which has not been provided. Ms. Andersen further reserves the right to

10    supplement this disclosure in the course of investigation and discovery.

11

12
    DATED this 30th day of January, 2006
13
                    LYBECK MURPHY, LLP
14

15

16                  By: _____

17                     Lory R. Lybeck (OSB #83276)
                       Attorneys for plaintiffs
18

19

20

21

22

23

24

25

26

Defendant's Rule 26(a)(1) Initial Disclosures - 4
andersen\pleadings\discovery\init.disc

Lybeck♦Murphy LLP
7525 SE 24th Street, Ste. 500
Mercer Island, WA 98040-2334
206-230-4255  Fax 206-230-7791

Exhibit D
Page 4 of 5

1

### DECLARATION OF SERVICE

2      I hereby certify and declare that Defendant's Rule 26(a)(1) Initial Disclosures was served on the attorneys listed below on the  30th  day of January, 2006, by the method indicated below:

3

4   **Atty/Plaintiffs:**
5   Kenneth R. Davis, II
    William T. Patton
6   Lane Powell PC
    601 SW Second Avenue, Suite 2100
7   Portland, OR 97204

8   Matthew C. Miller
9   Shook, Hardy & Bacon, LLP
    2555 Grand Blvd.
10  Kansas City, MI 64108

11

12      X  by first class mail to the attorney(s) as shown above at the last known office addresses of the attorney(s).

13

14      I declare under the penalty of perjury under the laws of the State of Washington that the foregoing

15  is true and correct to the best of my knowledge and belief.

16      DATED at Mercer Island, Washington, this  30th  day of January, 2006.

17

18                                        _____
                                          Elizabeth Curtis
19

20

21

22

23

24

25

26

Defendant's Rule 26(a)(1) Initial Disclosures - 5
andersen\pleadings\discovery\init.disc

Lybeck◊Murphy LLP
7525 SE 24th Street, Ste. 500
Mercer Island, WA 98040-2334
206-230-4255  Fax 206-230-7791

Exhibit D
Page 5 of 5

1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ATLANTIC RECORDING CORPORATION, )
a Delaware corporation; )
PRIORITY RECORDS, LLC, a )
California limited liability )
company; CAPITOL RECORDS, INC., )
a Delaware corporation; UMG )
RECORDINGS, INC., a Delaware )
corporation; and BMG MUSIC, )
a New York general partnership, )
)
              Plaintiffs, )
)
      vs. )
)
TANYA ANDERSEN, )
)
         Defendant. )

ORIGINAL

Case No. CV 05-933 AS

DEPOSITION OF TANYA J. ANDERSEN

Taken in behalf of the Plaintiffs

March 29, 2007

* * *

EXHIBIT
Exhibit E
Page 1 of 6

117

```
1    Q.   How about Blues Travelers?

2    A.   I don't know who that is.

3    Q.   Never heard of Blues Travelers?

4    A.   No.

5    Q.   Bryan Adams, have you heard of Bryan Adams?

6    A.   I've heard of him.

7    Q.   Do you ever listen to Bryan Adams?

8    A.   I have on the radio.

9    Q.   How about Chris Isaak?  Do you know who Chris Isaak

10        is?

11   A.   I have heard that name.  I don't remember what that

12        person does.  I have heard their name on the radio.

13   Q.   Have you ever heard of Everclear?

14   A.   I have heard that name.

15   Q.   John Cougar Mellencamp?

16   A.   I've heard of him.

17   Q.   Do you like him as an artist?

18   A.   I wouldn't go buy his CDs.  I mean I hear it on the

19        radio.

20   Q.   How about Clay Aiken?  Do you like Clay Aiken?

21   A.   No.

22   Q.   Do you know who he is?

23   A.   I know who he is, and I think he's weird.

24   Q.   How about the Doobie Brothers?

25   A.   No, I don't listen to them.
```

Exhibit E
Page 2 of 6

118

```
 1   Q.  Eagles?

 2   A.  I like them.

 3   Q.  Do you have any of their albums?

 4   A.  No.

 5   Q.  How about Reba McEntire?  Do you like her?

 6   A.  I don't -- I don't listen to her.  I've heard her

 7       music, but I don't --

 8           MR. LYBECK:  Is she in here?

 9   Q.  BY MR. REYNOLDS:  She's a country artist?

10   A.  Yeah.  I like her show, her TV show.

11           MR. LYBECK:  Here she is.

12   Q.  BY MR. REYNOLDS:  How about Tom Petty?  Do you like

13       Tom Petty?

14   A.  I liked him from years ago.

15   Q.  And Steve Miller?  Do you know who Steve Miller is?

16   A.  I know I've heard that before, but I -- I can't even

17       think what he sings right now.  I know he had some

18       stuff back in the seventies.

19   Q.  How about Travis Tritt?

20   A.  I've listened to him before.

21   Q.  And Trisha Yearwood?  Do you know who she is?

22   A.  I know who she is.

23   Q.  Is she a country artist?

24   A.  Yes.

25   Q.  Is Travis Tritt a country artist?
```

Exhibit E
Page 3 of 6

119

```
 1    A.  Yes.

 2    Q.  Do you have any of their albums?

 3    A.  Travis Tritt I might have a couple.

 4    Q.  Elton John, do you like Elton John?

 5    A.  He's okay.  Most people like Elton John.  I don't

 6        know any of his music.

 7    Q.  How about Willie Nelson?

 8    A.  I'm not really into him either.

 9    Q.  Do you have any of Willie Nelson's CDs?

10    A.  No.

11    Q.  How about Charlie Daniels Band?

12    A.  I don't know what they sing.

13    Q.  Hank Williams, Junior, do you know who he is?

14    A.  I know who he is.

15    Q.  Do you have any of his albums?

16    A.  No.

17    Q.  Do you listen to him?

18    A.  Not on a regular basis.  I usually listen to the

19        radio, so whatever they play.

20    Q.  Do you ever listen to Air Supply?

21    A.  No.

22    Q.  When you got the complaint in this case, did you try

23        to look for any of these sound recordings on your

24        computer?

25    A.  Uh-huh.
```

Exhibit E
Page 4 of 6

120

```
 1   Q.  Which ones did you try to look for?

 2   A.  I just -- I didn't know -- when I first got this

 3       complaint, I was like, you know, blown away.  I mean

 4       I -- for one thing, I didn't know even at first what

 5       a shared file folder was.  And, you know, I had

 6       checked that, so there was nothing on there.  And so

 7       that's how I checked it.

 8            I mean I -- I'm sure I've ran, probably, you

 9       know, just because -- it's just an overwhelming --

10       you get served with one of these lawsuits and you

11       haven't done it, there's an overwhelming amount of

12       time and energy I've spent into trying to figure out

13       where the heck this could have came from.

14            So yeah, I have, you know, put different ones

15       through there and tried to see, you know, and

16       there's nothing.

17   Q.  When you say "different ones," you mean typed in

18       different file names here, different songs?

19   A.  Yeah, or anything I could think of to try to see

20       where this was coming from.

21   Q.  Did you try to find gotenkito on the computer, that

22       user name?

23   A.  Yeah.

24   Q.  What did you do to find that?

25   A.  Just put in the search, searched.
```

123

```
 1              MR. LYBECK:  I'll look, because the only thing
 2         I had from production from you is the CD and I have
 3         that here.
 4              MR. REYNOLDS:  I believe it's on the CD.
 5              MR. LYBECK:  Okay.
 6    Q.   BY MR. REYNOLDS:  As I said, this Schedule 1 is a
 7         subset of the sound recordings that are on the big
 8         exhibit, this Exhibit 5.
 9              Looking at Exhibit 8, which is Schedule 1, do
10         you recognize any of the artists on this page and a
11         quarter?  And just tell me which ones you recognize
12         as people whose songs you have heard.
13    A.   Aerosmith; I know I've heard of Everclear, but I
14         don't know what their music is; Phil Collins.  I've
15         heard of Godsmack as being talked about places; I
16         don't know their music.  Scorpions I've heard of.
17         I've heard of Alabama; I've heard of Reba McEntire;
18         I've heard of Sting.  I have heard of Tom Petty and
19         Billy Idol, Beck.  I've heard of Lil' Kim and I've
20         heard of Rob Zombie.  And I have heard of Nelly and
21         Poison.
22              I've heard of those people.
23    Q.   Are any of the artists that you have just listed as
24         artists that you have heard before, are they artists
25         that you have heard over the radio?
```

**Kenneth R. Davis, II**, OSB No. 97113
davisk@lanepowell.com
**William T. Patton**, OSB No. 97364
pattonw@lanepowell.com
**LANE POWELL** PC
601 SW Second Avenue, Suite 2100
Portland, Oregon 97204-3158
Telephone:  503.778.2100
Facsimile:  503.778.2200

**Timothy Reynolds**, *Admitted Pro Hac Vice*
timothy.reynolds@hro.com
**HOLME ROBERTS & OWEN LLP**
1700 Lincoln Street, Suite 4100
Denver, Colorado  80203
Telephone:  (303) 861-7000
Facsimile:  (303) 866-0200

Attorneys for Plaintiffs Atlantic Recording Corporation, Priority Records LLC,
Capitol Records, Inc., UMG Recordings, Inc. and BMG Music

## UNITED STATES DISTRICT COURT

### DISTRICT OF OREGON

| | |
|---|---|
| **ATLANTIC RECORDING CORPORATION, a Delaware corporation; PRIORITY RECORDS LLC, a California limited liability company; CAPITOL RECORDS, INC., a Delaware corporation; UMG RECORDINGS, INC., a Delaware corporation; and BMG MUSIC, a New York general partnership,** | Case No. 3:05-CV-933-AS |
| Plaintiffs, | **DECLARATION OF AMY BAUER IN SUPPORT OF PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR FEES** |
| v. | |
| **TANYA ANDERSEN,** | |
| Defendant. | |

I, AMY BAUER, ESQ., declare

EXHIBIT

Exhibit F
Page 1 of 3

1.      I am an attorney with the law firm of Holme, Roberts & Owen, LLP, attorneys for Plaintiffs in this matter.  I respectfully submit this declaration in support of Plaintiffs' response in opposition to Defendant's motion for attorney fees.  I have personal knowledge of all facts set forth in this declaration except as where stated on information and belief.  As to such facts, I believe them to be true.

2.      As part of their diligence in this case, Plaintiffs' counsel became aware of an individual using the name "gotenkito" on his MySpace.com page.  "Gotenkito" was also the KaZaA username at issue in this case.

3.      The MySpace.com page belonging to "gotenkito" provided that "gotenkito" was, at the time, a 31 year old male residing in Everett, Washington named Chad.  The page further revealed that this individual was associated with a company called J-Lee Floors.

4.      Upon further investigation, I obtained the web site, address and phone number for J-Lee floors and began making efforts to contact this individual.

5.      After many tries, on April 24, 2007, I was able to speak with Chad at J-Lee Floors.  During our conversation, I learned that his full name is Chad Alstad and that he is the individual associated with the MySpace.com page with the username "gotenkito".

6.      Upon further discussion, I learned that Mr. Alstad's use of "gotenkito" is related to his interest in the anime program Dragonball Z.  Mr. Alstad indicated that he often uses "gotenkito" as a username, but is frequently blocked from doing so because the name is quite popular among fans of Dragonball Z.

7.      As of the date of our conversation, Mr. Alstad resided in Everett, Washington.  He stated that he has lived in State of Washington his entire life, with the exception of four years during which he was posted at Camp Pendleton, California.

2

Exhibit F
Page 2 of 3

8.    Mr. Alstad denied ever having lived in or visited Oregon.

9.    Mr. Alstad stated that he has never used KaZaA to download and/or upload and share sound recordings.

10.    Contrary to Defendant's representation, Mr. Alstad was located by Plaintiffs' counsel, with no help from Defendant.

11.    As part of their initial disclosures, Plaintiffs, via counsel, provided Defendant with copies of the infringing files they had secured as part of their investigation.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this __9th__ day of August, 2007, at Denver, Colorado.

AMY BAUER, ESQ.

3

mh-051507-1a - vol. I.txt

0001
1                IN THE UNITED STATES DISTRICT COURT
2                   FOR THE DISTRICT OF OREGON
3
4   ATLANTIC RECORDING            )
    CORPORATION, a Delaware       )
5   corporation; PRIORITY         )
    RECORDS, LLC, a California    )
6   limited liability company;    )
    CAPITOL RECORDS, INC., a      )
7   Delaware corporation;         )
    UMG RECORDINGS, INC., a       )
8   Delaware corporation; and     )
    BMG MUSIC, a New York         )
9   general partnership,          )
                                  )
10            Plaintiffs,         )
                                  )
11       v.                       )   No. CV 05-933 AS
                                  )
12   TANYA ANDERSEN,              )
                                  )
13            Defendant.          )
     _____    )

14
15              DEPOSITION OF LINDSAY ANDERSEN
16              Taken on behalf of Plaintiffs
17
18       BE IT REMEMBERED THAT, pursuant to the Federal
19   Rules of Civil Procedure, the deposition of LINDSAY
20   ANDERSEN was taken before MARILYNN T. HOOVER, a
21   Registered Professional Reporter and a Certified
22   Shorthand Reporter in Oregon, Washington, and
23   California; on Tuesday, May 15, 2007, commencing at
24   the hour of 10:46 A.M.; at 1001 S.W. Fifth Avenue,
25   Suite 1100, in Portland, Oregon.
0002
1                      APPEARANCES:
2   HOLME ROBERTS & OWEN, LLP
         BY MR. TIMOTHY M. REYNOLDS
3        1700 Lincoln Street, Suite 4100
         Denver, Colorado 80203
4        303-866-0332
         Attorney for Plaintiffs
5        (appearing via telephone)
6
7   LYBECK & MURPHY, LLP
         BY MR. BEN JUSTUS
8           MR. LORY LYBECK
         7525 S.E. 24th Street, Suite 500
9        Mercer Island, Washington 98040
         206-230-4255
10       Attorney for Defendant
         (appearing via telephone)
11
12
13
14
15
16
17                         Page 1



Exhibit G
Page 1 of 3

mh-051507-1a - Vol. I.txt

```
23        "tall," I'm not sure what you mean.  It wasn't
24        that high off the ground, was it?
25    A.  No.  It was -- It had the desk that you put the
0044
 1        computer on, and then it had -- I don't know
 2        how to explain it, but it had like a -- like a
 3        shelf that was -- that came up from the
 4        desktop.
 5    Q.  I see.  Behind the computer?
 6    A.  Yes.
 7    Q.  Okay.  And that shelf went up against the wall?
 8    A.  Yes.
 9    Q.  And there were CDs on that shelf?
10    A.  Yes, there was.
11    Q.  And mixed -- And with those CDs, were they all
12        music CDs, or were they game CDs too?
13    A.  I believe they were all music CDs, but I can't
14        be too sure, though.
15    Q.  Were there also CDs over by the stereo?
16    A.  I don't think so.
17    Q.  And what else was on the -- on the desk,
18        besides the CDs and the computer?
19    A.  There was paperwork.  I know she kept a lot of
20        paperwork on her desk, and I think that was
21        about it.
22    Q.  Since finding out about this lawsuit from
23        Ms. Andersen, have you ever talked to her about
24        Kazaa?
25    A.  No.
0045
 1    Q.  Have you ever tried to find out more
 2        information about Kazaa?
 3    A.  No.
 4    Q.  Did you ever talk to Kesia about this lawsuit?
 5    A.  I don't believe so.
 6    Q.  Did you ever talk to your father about this
 7        lawsuit?
 8    A.  I don't believe so either.
 9    Q.  Does your father know you're being deposed
10        today?
11    A.  Yes, he does.
12    Q.  You told him about the deposition; right?
13    A.  Yes.
14    Q.  Did you talk to your father about the
15        deposition?
16    A.  I think it was just a little bit, to tell him,
17        you know, when it was, what time it was.
18    Q.  Aside from the location or the time and what it
19        was, what else did you talk about?
20    A.  I think that was it.
21    Q.  Did you ever talk to anyone about downloading
22        the Kazaa program to the computer in
23        Ms. Andersen's house?
24    A.  No.
25    Q.  Did you ever talk to anyone about downloading
0046
 1        music to the computer in Ms. Andersen's house?
 2    A.  No.
 3    Q.  Do you have any information about anyone
 4        downloading the Kazaa program to the computer
 5        at the Avery Street address?
 6    A.  No, I don't.
 7    Q.  And do you have any information about anyone
                           Page 19
```

mh-051507-1a - Vol. I.txt

```
 8            ever downloading music to the computer at the
 9            Avery Street address?
10    A.      No, I don't.
11    Q.      Do you know one way or the other whether anyone
12            ever used the Kazaa program on the computer at
13            the Avery Street address?
14    A.      No, I don't know anything.
15    Q.      Have you ever heard of Dragonball Z?
16    A.      Yes, I have.
17    Q.      Could you tell me what that is?
18    A.      I believe it's a cartoon.
19    Q.      And what -- what kind of cartoon is it, do you
20            know?
21    A.      I don't really watch it.  I know that my little
22            sister does.
23    Q.      Which little sister?
24    A.      Kylee.
25    Q.      She watches that cartoon?
0047
 1    A.      Yes, she does.
 2    Q.      And does she have a favorite character or
 3            anything?
 4    A.      I don't think so.
 5    Q.      Do you know what the cartoon is about?
 6    A.      No, I don't.
 7    Q.      And when have you seen Kylee watching
 8            Dragonball Z?
 9    A.      I don't think I've ever actually see her watch
10            it, but she talks about it a lot.
11    Q.      She does.  What does she talk about?
12    A.      That she really likes it.
13    Q.      When she says that, what does she -- does she
14            go on about what it's about, or does she just
15            say she likes it?
16    A.      She just says that she likes it.
17    Q.      What does she like about it?
18    A.      I'm not too sure.
19    Q.      Does she ever pretend to be any of the
20            characters or anything like that?
21    A.      I don't think so.
22    Q.      Has she ever shown you any drawings or anything
23            of any of the characters?
24    A.      She might have, but I'm not too sure.  She
25            draws a lot and shows me a lot of pictures,
0048
 1            so...
 2    Q.      Um-hum.  Well, did -- did she ever play a
 3            Dragonball Z game?
 4    A.      I don't remember.
 5    Q.      Do you know whether there is such a thing as a
 6            Dragonball Z game?
 7    A.      I have no idea.
 8    Q.      Did you ever watch any, even little bits, of
 9            Dragonball Z with Kylee?
10    A.      I don't think so.
11    Q.      Is it something that she watched on television?
12    A.      She might have.  I know it's -- I mean, it's on
13            television, but I don't really know when
14            exactly she watched it.
15    Q.      Um-hum.  Well, did you ever see her watching
16            it?
17    A.      No.
18    Q.      When was the first time you recall Kylee saying
```

Page 20

Exhibit G
Page 3 of 3

mh-051507-ab - vol. I.txt

```
0001
1                IN THE UNITED STATES DISTRICT COURT
2                   FOR THE DISTRICT OF OREGON
3
4    ATLANTIC RECORDING              )
     CORPORATION, a Delaware         )
5    corporation; PRIORITY           )
     RECORDS, LLC, a California      )
6    limited liability company;      )
     CAPITOL RECORDS, INC., a        )
7    Delaware corporation;           )
     UMG RECORDINGS, INC., a         )
8    Delaware corporation; and       )
     BMG MUSIC, a New York           )
9    general partnership,            )
                                     )
10              Plaintiffs,          )
                                     )
11        v.                         )   No. CV 05-933 AS
                                     )
12   TANYA ANDERSEN,                 )
                                     )
13              Defendant.           )
     _____)
14
15
                   DEPOSITION OF ANIA BRUNS
16
                Taken on behalf of Plaintiffs
17
18        BE IT REMEMBERED THAT, pursuant to the Federal
19   Rules of Civil Procedure, the deposition of ANIA BRUNS
20   was taken before MARILYNN T. HOOVER, a Registered
21   Professional Reporter and a Certified Shorthand
22   Reporter in Oregon, Washington, and California; on
23   Tuesday, May 15, 2007, commencing at the hour of 4:57
24   P.M.; at 1001 S.W. Fifth Avenue, Suite 1100, in
25   Portland, Oregon.
0002
1                        APPEARANCES:
2    HOLME ROBERTS & OWEN, LLP
              BY MR. TIMOTHY M. REYNOLDS
3             1700 Lincoln Street, Suite 4100
              Denver, Colorado 80203
4             303-866-0332
              Attorney for Plaintiffs
5             (appearing via telephone)
6
7    LYBECK & MURPHY, LLP
              BY MR. BEN JUSTUS
8                MR. LORY LYBECK
              7525 S.E. 24th Street, Suite 500
9             Mercer Island, Washington 98040
              206-230-4255
10            Attorney for Defendant
              (appearing via telephone)
11
12
13
14
15
16
17                            Page 1
```



Exhibit H
Page 1 of 2

mh-051507-ab - Vol. I.txt

```
20        when Ms. Andersen talked to you about the user
21        name in this case?
22   A.   I don't.
23   Q.   Did you ever do any research regarding the user
24        name?
25   A.   No.
0032
 1   Q.   Do you know what the user name is?
 2   A.   She told me, but I do not remember.
 3   Q.   I want to get back to the discussion about
 4        Kazaa.  Have you told me everything that you
 5        can -- that you can tell me about Kazaa?  Do
 6        you know anything else about Kazaa, that you
 7        haven't told me?
 8   A.   I do not.
 9            MR. JUSTUS:  Objection to form.
10            THE REPORTER:  For clarification, who was
11        speaking?
12            MR. JUSTUS:  That was me, Mr. Justus.
13            THE REPORTER:  Thank you.
14   Q.   BY MR. REYNOLDS:  Did you ever install Kazaa on
15        Ms. Andersen's computer?
16   A.   I don't remember ever installing Kazaa on
17        Tanya's computer.
18   Q.   Are you saying it's possible that you did; you
19        just don't remember one way or the other?
20   A.   I don't remember one way or the other.
21   Q.   You said earlier that you've never been to the
22        Kazaa Web site; is that true?
23   A.   Yes.
24   Q.   So if you've never been to the Kazaa Web site,
25        do you know how you would have installed Kazaa
0033
 1        on Ms. Andersen's computer if you did?
 2   A.   I have no idea.
 3   Q.   Do you remember ever installing Kazaa on
 4        Ms. Andersen's computer?
 5   A.   No, I don't.  I don't remember.
 6   Q.   I'm sorry.  Go ahead.
 7   A.   I do not remember ever doing it, no.
 8   Q.   Did you ever talk to Ms. Andersen about
 9        installing Kazaa on her computer?
10   A.   I don't remember.
11   Q.   Did you ever talk to Ms. Andersen about
12        installing Kazaa Lite on her computer?
13   A.   Not that I remember, no.
14   Q.   Did you ever install Kazaa Lite on
15        Ms. Andersen's computer?
16   A.   No.  I don't remember.
17   Q.   Did you ever install Kazaa Lite on any
18        computer?
19   A.   No.
20   Q.   Prior to this lawsuit, did you ever do any
21        research about Kazaa?
22   A.   No.
23   Q.   Ms. Andersen testified at her deposition that
24        you downloaded Kazaa Lite to her computer at
25        about the same time that she got the Verizon
0034
 1        Internet.  Do you remember doing that?
 2   A.   I do not.
 3   Q.   Do you deny doing that?
 4   A.   Pardon me?
```

Page 14

Exhibit H
Page 2 of 2

LEXSEE 2007 US DIST LEXIS 41847

**Carol L. Shloss, Plaintiff, v. Sean Sweeney, et al., Defendants.**

**NO. C 06-03718 JW**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF
CALIFORNIA, SAN JOSE DIVISION**

*2007 U.S. Dist. LEXIS 41847*

**May 30, 2007, Decided**

**COUNSEL:** [*1] For Carol Loeb Shloss, Plaintiff: Bernard A. Burk, LEAD ATTORNEY, Howard, Rice, Nemerovski, Canady, Falk & Rabkin, A Professional Corporation, San Francisco, CA.; David S. Olson, Jennifer Stisa Granick, Lawrence Lessig, LEAD ATTORNEYS, Anthony T. Falzone, Stanford Law School Center for Internet and Society, Stanford, CA.; Mark Alan Lemley, Matthew Mickle Werdegar, LEAD ATTORNEYS, Dorothy Rebecca McLaughlin, Keker & Van Nest, LLP, San Francisco, CA.

For Sean Sweeney, in his capacity as a trustee, The Estate of James Joyce, Defendants: Maria Kara Nelson, LEAD ATTORNEY, JONES DAY, Los Angeles, CA.

**JUDGES:** JAMES WARE, United States District Judge.

**OPINION BY:** JAMES WARE

**OPINION**

**ORDER GRANTING PLAINTIFF'S MOTION FOR AWARD OF ATTORNEY FEES AND COSTS**

**I. INTRODUCTION**

Carol Loeb Shloss ("Plaintiff") brought this action for a declaratory judgment and injunctive relief pursuant to the Copyright Act of 1976, *17 U.S.C. §§ 101 et seq.* and *28 U.S.C. § 2201.* Plaintiff sought a declaratory judgment that the use of certain written works in an electronic supplement to her book, if published, will not infringe any copyrights controlled or owned [*2] by the Estate of James Joyce ("Estate"), Stephen James Joyce, and Sean Sweeney, in his capacity as the trustee of the Estate (collectively, "Defendants"). The parties reached a settlement and filed a stipulated dismissal, which the Court approved. Presently before the Court is Plaintiff's Motion for Award of Attorney Fees and Costs. The Court finds it appropriate to take the motion under sub-

mission without oral argument. See Civ. L.R. 7-1(b). Based on the papers submitted to date, the Court GRANTS Plaintiff's Motion for Award of Attorney Fees and Costs. [1]

> 1   The Court acknowledges receipt of Defendants' Evidentiary Objections to Exhibits A, B, J, and Q to the Declaration of David S. Olson, Docket Item No. 81. Since the Court does not rely on any of these four exhibits in this Order, the Objections are moot.

**II. BACKGROUND**

In June 2006, Plaintiff brought, this action for declaratory and injunctive relief pursuant to the Copyright Act of 1976, *17 U.S.C. §§ 101 et seq.* and [*3] the Declaratory Judgment Act, *28 U.S.C. § 2201.* Plaintiff alleged four causes of action: (1) Counts 1 and 2, for a declaratory judgment that the Electronic Supplement does not infringe Defendants' copyrights or is presumptively fair use; (2) Count 3, for a declaratory judgment of copyright misuse; and (3) Count 4, for a declaratory judgment of Defendants' unclean hands. The factual allegations are found in the Court's February 9, 2007 Order denying Defendants' motion to dismiss. (hereafter, "February 2007 Order," Docket Item No. 21.)

In its February 2007 Order, the Court found that (1) Plaintiff had a real and reasonable apprehension of copyright liability sufficient to create an actual controversy between the parties; (2) Defendants' then-proposed covenant not to sue was inadequate to moot that controversy; and (3) Plaintiff had sufficiently alleged a nexus between Defendants' actions and the Copyright Act's public policy of promoting creative expression to support a cause of action for copyright misuse. Id.

In March 2007, the parties reached a settlement. Defendants covenanted "not to sue Shloss for infringement of any copyrights resulting from Shloss's [*4] [sic] pub-

EXHIBIT

Exhibit I
Page 1 of 4

lication, in either electronic or printed form, of the Supplement . . ." Publication of the Supplement was limited to the United States. Defendants also agreed to provide Plaintiff with a copy of the September 21, 2006 letter from David Munro regarding the ownership of the Lucia Joyce copyrights. Defendants did not admit any actions, omissions, liability or damages under the settlement. The settlement agreement did not address the issue of attorney fees. (See Stipulation and Proposed Order Ex. 1, hereafter, "Settlement Agreement," Docket Item No. 71.) The Court approved the Settlement Agreement, dismissed the actions with prejudice, and retained jurisdiction to enforce the Settlement Agreement. (See Stipulation and Order Dismissing Actions, Docket Item No. 72.)

Presently before the Court is Plaintiff's Motion for Attorney Fees and Costs.

### III. STANDARDS

Under the Copyright Act, the court may award a reasonable fee to the "prevailing" party. *17 U.S.C. § 505.* Under Supreme Court precedent, a "prevailing party" must (1) achieve a material alteration of the legal relationship of the parties (2) which alteration is judicially sanctioned. [*5] *Carbonell v. INS, 429 F.3d 894, 897-98 (9th Cir. 2005)* (citing *Buckhannon Bd. & Care Home, Inc. v. West Virginia Dep't of Health & Human Res., 532 U.S. 598, 604-05, 121 S. Ct. 1835, 149 L. Ed. 2d 855 (2001)).*

### IV. DISCUSSION

Plaintiff contends that she is the "prevailing party" in this litigation, because the parties'. Settlement Agreement effected a material alteration in the parties' legal relationship. (Notice of Motion and Motion for Award of Attorneys' Fees and Costs; Memorandum of Points and Authorities in Support at 10-11, hereafter, "Motion," Docket Item No. 73.) Defendants contend that they are the prevailing party, because the Settlement Agreement resulted in Plaintiff's dismissal of her action with prejudice. (Defendants' Opposition to Plaintiffs' Motion for Award of Attorneys' Fees and Costs at 7-8, hereafter, "Opposition," Docket Item No. 78.)

The Ninth Circuit has found, *inter alia,* that an enforceable judgment on the merits, a court-ordered consent decree, a preliminary injunction, and a legally enforceable settlement agreement can each represent a material alteration in the parties' relationship sufficient to justify an award of attorney fees. *Carbonell, 429 F.3d at 898-99.* [*6] For instance, one plaintiff under the Americans with Disabilities Act of 1990 ("ADA") reached a settlement agreement prohibiting the defendant, an interscholastic federation, from excluding plaintiff from on-field coaching of baseball games, and requir-

ing the defendant to pay money damages. *Barrios v. Cal. Interscholastic Fed'n, 277 F.3d 1128, 1134 (9th Cir. 2002).* The court found that the plaintiff was the prevailing party because he could enforce the terms of the settlement agreement against the defendant. Id.

A plaintiff need not secure complete relief via settlement agreement in order to receive prevailing party status. For instance, in another Ninth Circuit ADA case, the parties reached a settlement agreement of which the district court found: "[A]lthough the settlement mandates are significantly less than the relief the Plaintiffs sought . . . [they] have achieved greater safeguards against inappropriate transfers to community placements and greater input from healthcare professionals into the decision to transfer consumers . . ." *Richard S. v. Dep't of Dev. Servs., 317 F.2d 1080, 1087 (9th Cir. 2003).* The Ninth Circuit found in Richard [*7] S. that "prevailing party status is not determined by the degree of success achieved;" rather, the level of success only affects the amount of the fee award. Id. Since the district court had previously found that the plaintiffs were the "prevailing party to a limited extent," they were entitled to fees and costs. Id.

In this case, Plaintiff secured via Settlement Agreement the essence of the relief she had sought: the ability to publish the Electronic Supplement online for access within the United States, without threat of suit from Defendants. Moreover, Plaintiff secured further relief not even requested in her First Amended Complaint: that is, the ability to publish her Electronic Supplement in *print* format, without fear of suit from Defendants. In return, Plaintiff agreed only to dismiss her claims with prejudice; she did not agree to pay Defendants money or to limit her conduct. Defendants' contention that they are the "prevailing party" because Plaintiff agreed to dismiss her claims with prejudice is untenable. It would mean that any party who secures a dismissal with prejudice of the claims against them by acquiescing to the opposing party's demands, is actually [*8] the prevailing party (and potentially entitled to an award of attorney fees.)

Defendants also contend that as an alternative to ruling on Plaintiffs' motion for attorney fees, the Court should vacate the dismissal entered in the action based on the Settlement Agreement pursuant to *Federal Rule of Civil Procedure Rule 60(b)(6).* (Opposition at 23.) *Rule 60(b)(6)* provides, "On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for . . . any other reason justifying relief from the operation of the judgment." Defendants have identified no valid reason justifying relief from the Settlement Agreement or the Order Granting Stipulated Dismissal with Prejudice. The issue of Plaintiff's entitlement to attorney fees was not addressed in either the Agreement

Exhibit I
Page 2 of 4

2007 U.S. Dist. LEXIS 41847, *

or the Order of Dismissal. The Court finds that as parties well represented by counsel, Defendants had no basis to believe that the issue of attorney fees was disposed of by a Settlement Agreement that made no reference to attorney fees.

Accordingly, the Court finds that, by the Settlement Agreement, Plaintiff [*9] achieved a material, judicially sanctioned alteration in the parties' legal relationship. Thus, an award of attorney fees is proper.

## V. CONCLUSION

The Court GRANTS Plaintiffs' Motion for Attorney Fees and Costs. The parties shall submit any future motions regarding the amount of fees and costs to the assigned Magistrate Judge.

Dated: May 30, 2007

JAMES WARE

United States District Judge

Exhibit I
Page 3 of 4

1071MV

********** Print Completed **********

Time of Request: Friday, August 10, 2007  11:06:37 EST

Print Number:    1822:41973420
Number of Lines: 124
Number of Pages:

Send To:  BAUER 4082, AMY
          HOLME ROBERTS & OWEN
          1700 LINCOLN ST STE 4100
          DENVER, CO 80203-4541

Exhibit I
Page 4 of 4

Case 5:06-cv-00592-OLG    Document 23    Filed 11/30/2006    Page 1 of 3

# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS,
### SAN ANTONIO DIVISION

**FILED**

NOV. 2 9 2006

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
                    DEPUTY CLERK

VIRGIN RECORDS AMERICA, et al.,        §
    Plaintiffs,        §
        §
        §    CAUSE NO. SA-06-CA-592-OG
v.        §
        §
CLIFF THOMPSON,        §
    Defendant.

## ORDER DISMISSING CASE AND DENYING DEFENDANT'S REQUEST FOR ATTORNEY'S FEES

Before the Court are plaintiffs' motion to dismiss this case and defendant's request for attorney's fees.

Plaintiffs move to dismiss this copyright infringement suit against Cliff Thompson on the ground that they have learned that Thompson's daughter Brigette is the person responsible for the copyright violations that occurred in Thompson's home and on his computer using his Internet account. The motion will be granted.

Thompson has filed a request for attorney's fees. Under the Copyright Act, a court has discretion to allow the recovery of costs, including "a reasonable attorney's fee," to "the prevailing party." 17 U.S.C. § 505. Attorney's fees "are the rule rather than the exception and should be awarded routinely." Positively Black Talk, Inc. v. Cash Money Records, 394 F.3d 357, 380 (5th Cir. 2004) (quoting McGaughey v. Twentieth Century Fox Film Corp., 12 F.3d 62, 65 (5th Cir. 1994)). "Routinely," however, does not mean "automatically," and attorney's fees are awarded to prevailing parties in copyright cases as a matter of the court's discretion. Fogerty v. Fantasy, Inc., 510 U.S. 517, 534 (1994). The court may consider the following nonexclusive factors in determining whether to award prevailing party attorney fees: frivolousness, motivation, objective unreasonableness (both in factual and in legal components of the case), and



EXHIBIT

Exhibit J
Page 1 of 3

the need in particular circumstances to advance the Copyright Act's considerations of compensation and deterrence. Id. at 534 n.19.

There is no indication in the record that plaintiffs filed this suit frivolously or prosecuted this suit with malevolent intent. Plaintiffs discovered substantial copyright infringement of their songs by a file-sharing program attached to an internet account registered to Thompson. Plaintiffs acted properly to protect their copyrights. In addition, the record indicates that plaintiffs attempted to contact Thompson to resolve the matter for some six months prior to filing suit. Thompson never informed plaintiffs that he was not responsible for the infringement until after he filed a counterclaim demanding his attorney's fees and costs.[1] When plaintiffs finally learned from Thompson that his "adult daughter" was responsible for the infringement, and, through their own efforts, identified Brigette Thompson as the adult daughter, they immediately moved to dismiss this suit. The Court finds that this suit was not frivolous or objectively unreasonable and that plaintiffs' motivation in bringing the suit was proper.

The purpose of copyright law is to promote and protect creativity. Alcatel USA, Inc. v. DGI Techs., Inc., 166 F.3d 772, 788 (5th Cir. 1999). See also Twentieth Century Music Corp. v. Aiken, 422 U.S. 151, 156 (1975) (basic purpose of Copyright Act is "to stimulate artistic creativity for the general public good"); Diamond v. Am-Law Pub. Corp., 745 F.2d 142, 147 (2d Cir. 1984) ("The principal purpose of the legislation is to encourage the origination of creative works by attaching enforceable property rights to them."). Plaintiffs brought an objectively

---

[1] Plaintiffs began contacting Thompson in January, 2006. Thompson filed his counterclaim for attorney's fees on August 14, 2006. He did not identify his adult daughter until September 7, 2006. (Docket no. 22 at 3.) While Thompson denies receiving all of plaintiffs' communications, he does admit to receiving the January demand letter and a pre-demand letter voice message, which he returned.

2

reasonable suit to protect their copyrights. The Court is not persuaded that plaintiffs have acted

in bad faith or maliciously so that they should be deterred from the same conduct in the future.

On the contrary, it appears that Thompson's conduct in failing to respond to plaintiffs' pre-suit

communications and to disclose the identity of the true infringer served to delay the prompt

resolution of this litigation.[2] The Court finds that an award of attorney's fees to Thompson would

not advance considerations of compensation and deterrence.

Plaintiffs' motion to dismiss this case (docket no. 12) is GRANTED, and this case is

DISMISSED with prejudice. Defendant's request for attorney's fees (docket no. 16) is DENIED.

Each party will bear their own costs.

SIGNED this _29_ day of _November_, 2006.

_ORLANDO L. GARCIA_
UNITED STATES DISTRICT JUDGE

---

[2] According to Thompson's characterization of plaintiffs' communications, plaintiffs were not seeking information and were only interested in discussing money. Offers to settle typically include a demand for money. This fact does not excuse Thompson's failure to respond to the communications or to inform the record companies that he was not the infringer.

3

Exhibit J
Page 3 of 3

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PRIORITY RECORDS L.L.C.,
ELEKTRA ENTERTAINMENT GROUP
INC., MOTOWN RECORDS COMPANY, L.P.,
WARNER BROS. RECORDS, INC., SONY
MUSIC ENTERTAINMENT INC., UMG
RECORDINGS, INC., and ARISTA
RECORDS, INC.,

       Plaintiffs,

vs.

CANDY CHAN,

       Defendant.

_____/

CASE NO. 04-CV-73645-DT
HON. LAWRENCE P. ZATKOFF

**OPINION AND ORDER**

AT A SESSION of said Court, held in the
United States Courthouse, in the City of Port Huron,
State of Michigan, on

PRESENT: THE HONORABLE LAWREI
UNITED STATES DISTRICT J

## I. INTRODUCTION

This matter is before the Court on Plaintiffs' Motion to .                                        ce

(Docket # 25). Defendant has filed a response and the reply per. .. ... .......   ... .... ...ne racts and legal

arguments are adequately set forth in the briefs submitted. Therefore, finding that the determination

of the issues will not be aided by oral argument, and pursuant to E.D. Mich. Local R. 7.1(e), this

Court ORDERS that Defendants' Motion to Dismiss be decided upon the briefs submitted, without

this Court entertaining oral arguments. For the reasons that follow, Plaintiffs' Motion to Dismiss

is GRANTED. Accordingly, Candy Chan's Motion to Compel (Docket #18) and the parties

Stipulation to Continue Without Date (Docket #26) are hereby DISMISSED AS MOOT.



EXHIBIT

Exhibit K
Page 1 of 5

Case 2:04-cv-73645-LPZ-RSW    Document 29    Filed 05/19/2005    Page 1 of 5

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PRIORITY RECORDS L.L.C.,
ELEKTRA ENTERTAINMENT GROUP
INC., MOTOWN RECORDS COMPANY, L.P.,
WARNER BROS. RECORDS, INC., SONY
MUSIC ENTERTAINMENT INC., UMG
RECORDINGS, INC., and ARISTA
RECORDS, INC.,

                                  CASE NO. 04-CV-73645-DT
                                  HON. LAWRENCE P. ZATKOFF

        Plaintiffs,

vs.

CANDY CHAN,

        Defendant.

_____/

## OPINION AND ORDER

AT A SESSION of said Court, held in the
United States Courthouse, in the City of Port Huron,
State of Michigan, on

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

## I. INTRODUCTION

This matter is before the Court on Plaintiffs' Motion to Dismiss Candy Chan with prejudice

(Docket # 25). Defendant has filed a response and the reply period has expired. The facts and legal

arguments are adequately set forth in the briefs submitted. Therefore, finding that the determination

of the issues will not be aided by oral argument, and pursuant to E.D. Mich. Local R. 7.1(e), this

Court ORDERS that Defendants' Motion to Dismiss be decided upon the briefs submitted, without

this Court entertaining oral arguments. For the reasons that follow, Plaintiffs' Motion to Dismiss

is GRANTED. Accordingly, Candy Chan's Motion to Compel (Docket #18) and the parties

Stipulation to Continue Without Date (Docket #26) are hereby DISMISSED AS MOOT.


EXHIBIT
Exhibit K
Page 1 of 5

## II. BACKGROUND

Plaintiffs filed the instant suit against Candy Chan because an e-mail address at an Internet Protocol ("IP") address registered to Candy Chan allegedly was used to copy files of the Plaintiffs and participate in the peer-to-peer distribution of such files. Plaintiffs therefore commenced this lawsuit and named her as the Defendant. A scheduling conference was held on December 14, 2004, at which time Candy Chan's counsel revealed for the first time that one of her children might have used the e-mail address in question ("*spicybrwneyedgrl@fileshare*"). The Court adjourned the scheduling conference for 60 days in order to allow Plaintiffs to add any necessary parties and amend their Complaint, if necessary. In an effort to satisfy the Court's directive to add parties within the 60-day adjournment period, Plaintiffs sent letters and interrogatories to Candy Chan and her counsel in an effort to determine who the appropriate defendant(s) might be. On February 8, 2005, at a deposition held because Candy Chan had not previously disclosed which of her children might have used the e-mail address, Candy Chan indicated that her daughter, Brittany Chan, used that e-mail address. The parties stipulated to delay the scheduling conference set for February 28, 2005, and to extend the time in which Plaintiffs could file an amended complaint.

Plaintiffs filed a motion for leave to file an Amended Complaint to add Brittany Chan as a defendant and voluntarily dismiss Candy Chan as a defendant without prejudice, without costs to either party. Candy Chan opposed the motion, and asserted that Plaintiffs used a shotgun approach to pursue this action, threatened to sue all of Candy Chan's children and engaged in abusive behavior in an attempt to utilize the court as a collection agency. At a hearing held on March 15, 2005, the Court granted Plaintiffs' motion for leave to add Brittany Chan as a defendant but stated that it would only permit Plaintiffs to voluntarily dismiss Candy Chan if such dismissal was with prejudice. At that time, Plaintiffs withdrew their motion to voluntarily dismiss Candy Chan without prejudice. Subsequent to the March 15, 2005, hearing, Plaintiffs reversed course and now desire to dismiss Candy Chan with prejudice. In a letter to her counsel, Plaintiffs sought concurrence in dismissing Candy Chan with prejudice. Candy Chan's counsel refused to consent to such a

2

Exhibit K
Page 2 of 5

dismissal, even though Plaintiffs agreed to permit her counsel to seek attorney fees (provided Plaintiffs could oppose such motion). Candy Chan filed a response to Plaintiffs' motion to dismiss with prejudice, but other than a conclusory statement in closing, never actually opposed the voluntary dismissal with prejudice. Rather, her response brief focuses on her entitlement to attorney fees as a prevailing party.

### III. OPINION

The Sixth Circuit has identified four factors to consider in determining whether to grant a voluntary dismissal: (1) the amount of time and effort the defendant has incurred in preparing for trial; (2) any lack of diligence on the part of plaintiff in prosecuting the action; (3) the plaintiff's failure to explain the need for a dismissal; and (4) whether the defendant has filed a motion for summary judgment. *Grover by Grover v. Eli Lilly & Co.*, 33 F.3d 716, 718 (6th Cir. 1994).

Here, Candy Chan does not oppose Plaintiffs' motion to voluntarily dismiss Candy Chan with prejudice. In addition, the Court finds that (a) Candy Chan has not spent time preparing for trial, (b) Plaintiffs have not failed to attempt to prosecute the correct party in this action, (c) Plaintiffs have provided a reasonable explanation for why Candy Chan was a party and why Plaintiffs no longer desire to proceed against her, and (d) Candy Chan has not filed a motion for summary judgment or any similar dispositive motion. Therefore, the Court concludes that a dismissal of Candy Chan as a defendant in this action with prejudice is appropriate. Accordingly, Plaintiffs' motion to voluntarily dismiss Candy Chan with prejudice is GRANTED.

The Court now turns to the issue of whether an award of attorney fees is appropriate in this case. Candy Chan implores the Court to exercise its power to treat the voluntarily dismissal of Candy Chan as an adjudication on the merits pursuant to Fed. R. Civ. P. 41(b). Candy Chan notes, 17 U.S.C. § 505 would then authorize the Court to, in its discretion, award Candy Chan reasonable attorney fees as the prevailing party. Candy Chan suggests an award of attorney fees is particularly appropriate where, as in this case, the Plaintiffs have repeatedly brought claims and then dismissed

3

them after inflicting substantial litigation costs on the opposing party. *Relying on Aerotech, Inc. v. Estes*, 110 F.3d 1523 (10th Cir. 1997).

The Court need not determine whether the dismissal of Candy Chan with prejudice constitutes an adjudication on the merits. Rather, in exercising its discretion, the Court concludes that Candy Chan would not be entitled to attorney fees in conjunction with this case, even if the dismissal were considered an adjudication on the merits. Since filing this action, Plaintiffs have taken reasonable steps to try to prosecute this case and litigate against the proper defendant(s). They brought suit against Candy Chan because she was the registered user for the IP address from which the allegedly improper downloading and file sharing occurred. As evidenced by their letters and motions, Plaintiffs have been trying to take action against only those party responsible. To the extent Candy Chan has incurred legal fees in this action, such fees are primarily the result of tactics designed to impede the ability of Plaintiffs to prosecute this action in an efficient manner. In addition, the Court finds that the reason Plaintiffs have repeatedly filed motions is because Candy Chan has not agreed to fairly simple mechanisms which would accomplish the same objectives that the filing of motions has accomplished. Therefore, Candy Chan's request for attorney fees is denied.

## IV. CONCLUSION

Accordingly, and for the reasons set forth above, Plaintiffs' Motion to Dismiss Candy Chan with prejudice is GRANTED, and Candy Chan is hereby DISMISSED WITH PREJUDICE. The Court notes that Plaintiffs have failed to add any additional person(s) as a party in this case, notwithstanding the Court granting them leave to do so over two months ago. Therefore, the Court

4

Exhibit K
Page 4 of 5

DISMISSES Plaintiffs' case WITHOUT PREJUDICE as to any persons other than Candy Chan.

Judgment shall be entered accordingly.

     IT IS SO ORDERED.


               s/Lawrence P. Zatkoff
               LAWRENCE P. ZATKOFF
               UNITED STATES DISTRICT JUDGE

Dated: May 19, 2005

### CERTIFICATE OF SERVICE

     The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on May 19, 2005.

               s/Marie E. Verlinde
               Case Manager
               (810) 984-3290

Exhibit K
Page 5 of 5