IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| ATLANTIC RECORDING CORPORATION, a Delaware corporation; PRIORITY RECORDS, LLC, a California limited liability company; CAPITOL RECORDS, INC., a Delaware corporation; UMG RECORDINGS, INC., a Delaware corporation; and BMG MUSIC, a New York general partnership,<br><br>        Plaintiffs,<br><br>   v.<br><br>TANYA ANDERSEN,<br><br>        Defendant. | CV No. 05-933-AS<br><br>FINDINGS AND RECOMMENDATION |

ASHMANSKAS, Magistrate Judge:

    Presently before the court is Defendant's Motion for Attorney Fees (No. 138). For the reasons that follow, defendant's motion should be GRANTED.

BACKGROUND

    Plaintiffs brought the present action against defendant, alleging that she used her personal computer and the Internet to download and share sound recordings, thereby infringing on plaintiffs'

1 - FINDINGS AND RECOMMENDATION

rights under the Copyright Act. Defendant denied the allegations and asserted several counterclaims against plaintiffs. This court recently issued Findings and a Recommendation that defendant's Motion to Dismiss her counterclaims without prejudice be granted (No. 150). The course of this proceeding is more fully described in those Findings. Defendant filed the present motion for prevailing party fees in light of plaintiffs' stipulation to dismiss their case against her with prejudice.

## LEGAL STANDARDS

The basis for defendant's motion is the Copyright Act, which provides, in relevant part, that "the court may . . . award a reasonable attorney's fee to the prevailing party as part of costs." 17 U.S.C. § 505. Awarding fees under this provision is a matter of the court's discretion, but it is to be applied in an evenhanded manner, *i.e.*, "[p]revailing plaintiffs and prevailing defendants are to be treated alike." Fogerty v. Fantasy, Inc., 510 U.S. 517, 534 (1994).

The court may consider the following factors, which are non-exclusive: (1) frivolousness; (2) motivation; (3) objective unreasonableness (both in the factual and in the legal components of the case); and (4) the need in particular circumstances to advance considerations of compensation and deterrence (the "Fogerty factors"). Id. at n. 19. In exercising its discretion, the court must keep in mind the key consideration underlying the Fogerty factors: whether awarding fees would advance the purposes of the Copyright Act. Id.

The policies served by the Copyright Act are complex. It seeks to deter infringement, while limiting the monopoly privileges it authorizes. Thus, the Act reflects the general policy that monopoly privileges " while 'intended to motivate the creative activity of authors and inventors by the provision of a special reward,' are limited in nature and must ultimately serve the public good." Id. at 526, quoting Sony Corp. of America v. Universal City Studios, Inc., 464 U.S. 417, 429 (1984).

Elaborating on this principle, the Court explained:

> "'The limited scope of the copyright holder's statutory monopoly . . . reflects a balance of competing claims upon the public interest: Creative work is to be encouraged and rewarded, but private motivation must ultimately serve the cause of promoting broad public availability of literature, music, and the other arts. The immediate effect of our copyright law is to secure a fair return for an "author's" creative labor. But the ultimate aim is, by this incentive, to stimulate artistic creativity for the general public good.'"

Fogerty, 510 U.S. at 526-27, quoting Twentieth Century Music Corp. v. Aiken, 422 U.S. 151, 156 (1975) (internal quotation marks, ellipses and footnotes omitted in original).

The threshold issue, however, is whether defendant may properly be considered the prevailing party in the present action. Plaintiffs ask the court to apply the standard set forth in Buckhannon Board and Care Home, Inc. v. West Virginia Department of Health and Human Resources, a case interpreting the fee provisions of the Fair Housing Amendments Act and the Americans with Disabilities Act. In that context, fees may not be awarded to a prevailing party unless there is a "material alteration of the legal relationship of the parties" as demonstrated by an "enforceable judgment on the merits or a court-ordered consent decree." 532 U.S. 598, 604 (2001).

The Buckhannon standard has been applied in other contexts, such as the Equal Access to Justice Act. See, e.g., Perez-Orwellian v. Smith, 279 F.3d 791, 793-94 (9th Cir. 2002). However, district courts in this circuit have not applied the Buckhannon standard, to any substantial degree, in cases brought under the Copyright Act. See Berry v. Hawaiian Express Service, Inc., 2007 U.S. Dist. LEXIS 15077, *58-64 (applying Buckhannon to § 505 and compiling cases so doing from other jurisdictions).

In light of Fogerty's emphasis that fee awards further the purposes of the Copyright Act, application of the Buckhannon standard—which was developed under circumstances in which the

Copyright Act was not a consideration—might not always be appropriate. In the present case, as discussed more fully below, it is difficult to see how any purpose of the Copyright Act would be advanced by forcing defendant to choose between stipulating to plaintiffs' unconditional dismissal of their claims with prejudice or the opportunity to seek prevailing party fees under 17 U.S.C. § 505. That, however, is what strict application of the Buckhannon standard would do in this context.

Moreover, Fogerty recognized that the distinct policies underlying different acts of Congress should distinguish the interpretation of their attorney fee provisions. See 510 U.S. 522-24 (declining to apply interpretation of similarly worded fee provision in Title II of the Civil Rights Act due to differing policies underlying Copyright Act). As discussed more fully below, whether to award fees in cases such as this one, requires the court to determine how the purposes of the Copyright Act would best be served given the specific facts and relevant considerations, such as the Fogerty factors.

## DISCUSSION

I.  Is Defendant the Prevailing Party?

In this particular case, the plaintiffs' claims of copyright infringement were resolved when plaintiffs filed a Notice of Stipulation of Dismissal with Prejudice (No. 129) on June 1, 2007. Defendant's counterclaims remained an issue. Within a few weeks of the dismissal of plaintiffs' claims in the present action, however, defendant initiated a separate action against plaintiffs and three additional parties based in part on allegations concerning plaintiffs' conduct in regard to the present case as well as actions maintained against others similarly situated to defendant. Defendant seeks class certification in that action, Andersen v. Atlantic Recording, et al., CV 07-934-BR, which is currently pending in this district before the Honorable Anna J. Brown.

Subsequently, defendant moved to dismiss her counterclaims in the present case without prejudice so that they could be brought, along with other claims, in the separate action she had recently initiated. Plaintiffs opposed the motion, arguing that defendant had failed to diligently prosecute her counterclaims in the present action and that they were duplicative of her claims the new action. This court made Findings and a Recommendation that defendant's motion to dismiss her counterclaims without prejudice be granted (No. 150).

Consequently, more than two years after plaintiffs filed their complaint for copyright infringement, the court is faced with the question of whether to award prevailing party fees to defendant without ever addressing the merits of the claims or the counterclaims. (How this came to be is discussed in greater detail in the court's recent findings, docket No. 150.) Certainly the lack of a judgment on the merits or court-ordered consent decree is relevant to whether fees should be awarded. For example, in a recent case within this district, the Honorable Ann Aiken declined to award prevailing party fees to a defendant when the infringement claim against him was dismissed *without* prejudice, but the merits of the infringement claims against members of his household had yet to be addressed. Elektra Entertainment Group, Inc. v. Perez, CV No. 05-931-AA (2006 WL 3063493 (D. Or.)) However, while the existence of a decision on the merits is relevant, Fogerty does not make that determinative.

Although the dismissal in this case was by stipulation—not on the merits or by consent decree—there nonetheless has been, as described in Buckhannon, a "material alteration of the legal relationship of the parties." Since plaintiffs' copyright infringement claims have been dismissed with prejudice, defendant has received—with the exception of the motion for attorney fees currently at issue—all the relief available to a defendant of a claim for copyright infringement. Moreover,

5 - FINDINGS AND RECOMMENDATION

there is no evidence in the record that she had to make any concession in order to secure plaintiffs' stipulation to dismiss their claims with prejudice. The parties dispute whether plaintiffs' stipulation was at any point conditioned on defendant agreeing to dismiss her counterclaims with prejudice. However, nothing in the record refutes defendant's assertion that she ultimately did not make any concessions in exchange for the plaintiffs' stipulation. Consequently, plaintiffs' reliance on Shloss v. Sweeney, 2007 U.S. Dist. LEXIS 41847 (N.D. Cal. 2007) is misplaced.

In that case, the plaintiff sought a declaratory judgement of non-infringement, but ultimately dismissed her claim with prejudice pursuant to a settlement agreement that included the defendants' covenant not to sue. The court subsequently denied the defendants' motion for attorney fees, because the plaintiff had secured—through the settlement agreement—the essence of the relief she had sought. The court reasoned that the plaintiff's dismissal of her claims with prejudice, in and of itself, was an insufficient basis to award the defendants prevailing party fees, because in order to secure the dismissal, the defendants had actually acquiesced to the plaintiff's demands. That is not the case here.

In the present case, the claims against defendant were dismissed with prejudice and without concessions. In terms of the claim for copyright infringement, plaintiff has obtained no relief by order or agreement, while defendant has secured as much relief (except that related to the present motion) as she possibly could have obtained had the infringement claims been adjudicated on the merits. Consequently, defendant should be deemed the prevailing party in this action, which raises the ultimate issue of whether the purposes of the Copyright Act would be furthered by granting her motion for attorney fees.

/ / /

II.   Would Awarding Fees Serve the Purposes of the Copyright Act?

The first of the relevant factors under Fogerty is frivolousness. The parties dispute whether the lawsuit was frivolous *ab initio*. That depends in large part on the accuracy of the techniques utilized by plaintiffs and their investigator to identify defendant as the user of the name "gotenkito@KaZaA" and to tie her to the Internet Protocol ("IP") address from which plaintiffs' copyrighted sound recordings were allegedly downloaded. See Response in Opposition to Defendant's Motion for an Award of Attorney's Fees ("Plaintiffs' Response Brief") (No. 144), p. 3 (plaintiffs' description of pre-filing investigation). The record in this proceeding, however, is simply insufficient for the court to make that determination. Regardless of that issue, circumstances may arise in the course of litigation that make frivolous its continuation, or the continuation of certain legal theories. For example, in the cases plaintiffs cite, it was a factor in the courts' decisions not to award prevailing party fees, that the non-prevailing parties dismissed their claims, or the claims against a particular defendant, reasonably soon after they were determined to be not viable.[1]

---

[1] See, *e.g.*, Virgin Records, America v. Thompson, No. 06-CA-592-OG (W.D. Tex.) Order of Nov. 29, 2006, Ex. J to Plaintiffs' Response Brief, p. 2 (plaintiffs dismissed case as soon as they determined actual infringer was defendant's daughter); Priority Records, LLC v. Chan, No. 04-CV-73645-DT) (E.D. Mich.) Order of May 19, 2005, Ex. K to Plaintiffs' Response Brief, p. 1 (same circumstances);Interscope Records v. Leadbetter, No. CO5-1149-MJP-RSL (W.D. Wash.) Order of April 23, 2007, Ex. M to Plaintiffs' Response Brief, p. 3 (plaintiffs timely dismissed after identifying defendant's roommate as infringer); Virgin Records, America v. Darwin, SA CV 04-1346 AHS (ANx) (S.D. Cal) Order of April 17, 2006, Ex. N to Plaintiffs' Response Brief, p. 2 (plaintiffs dismissed claims after defendant produced evidence from Internet Service Provider that contradicted earlier evidence provided to plaintiffs and plaintiffs' responsive investigation identified defendant's former roommate as infringer); Capitol Records, Inc. v. O'Leary, No. SACV 05-406 CJC (RNBx) (C.D. Cal.) Order of January 31, 2006, Ex. O to Plaintiffs' Response Brief, p. 1-2 (plaintiffs' motion to dismiss without prejudice not dilatory, when case was in its infancy stages, defendant had only filed her answer, very little discovery and no depositions had occurred); Cf. Capital Records, Inc. v. Foster, No. Civ. 04-1569-W (W.D. Okla.) Order of Feb. 6, 2007, Ex. D to Memorandum in Support of Defendant's Motion for an Award of Attorney's Fees (No. 139), p. 4-5 (awarding fees when plaintiffs maintained

7 - FINDINGS AND RECOMMENDATION

As such, courts have recognized that a case, while not frivolous when filed, may become so in the course of discovery.

The present case is distinct from many of the other music downloading cases cited by the parties in that plaintiffs ultimately dismissed their claims for lack of evidence, not because they decided to pursue a different party (*e.g.*, a roommate or family member), or theory of recovery (*e.g.*, vicarious, as opposed to direct infringement). It is also somewhat distinct in that the claims were dismissed after significant briefing on discovery disputes and the merits of the claims and counterclaims, the course of which is described in greater detail in this court's recent Findings and Recommendation (No. 150). Plaintiffs do not specifically concede that they lacked evidence to support their claims, but that may reasonably be inferred from the timing of their stipulation—on the date their opposition to defendant's motion for summary judgment was due—and their admissions that "evidence uncovered during discovery proved inconsistent and inconclusive," which "has not been explained." Plaintiffs' Response Brief, p. 15. To defeat defendant's motion for summary judgment, plaintiffs need only have produced *prima facie* evidence sufficient to create a material issue of fact. Because they chose instead to dismiss their claims with prejudice, it can reasonably be inferred that plaintiffs did not possess such *prima facie* evidence, despite being given a fair opportunity to obtain it, having successfully moved to compel discovery on multiple occasions.[2] Consequently, after incurring significant fees to defend a dispute that substantially

---

claim for direct liability and added claim for vicarious liability based solely on defendant's maintenance of household Internet account in wake of identifying defendant's daughter as actual infringer).

[2] That is not to say that defendant made inappropriate objections or otherwise improperly inhibited the progress of discovery. The bases upon which defendant has sought to limit discovery were reasonable, *e.g.*, (1) protecting her privacy interest in sensitive personal

preceded the filing of plaintiffs' complaint over two years ago, no one even remotely connected to defendant has been alleged to be the actual infringer. Throughout this period of time, defendant has consistently maintained that to be the case.

Plaintiffs rely heavily on their evidence that Verizon thrice identified defendant as the owner of the IP address at issue, the one allegedly used by gotenkito@KaZaA for purposes of infringement. Without much more to offer in support of their claims, plaintiffs' investigation ultimately appears more cumulative than progressive. Moreover, both plaintiffs and defendant at some point identified a man residing in Everett, Washington, who has no connection to defendant, as a user of the screen name gotenkito@KaZaA. When contacted by plaintiffs in April 2007 (almost two years after initiating this action), this man made similar denials to those consistently made by defendant. Declaration of Amy Bauer, Ex. F to Plaintiffs' Response Brief, pp. 2-3. Inexplicably, plaintiffs credit his denials and discredit defendant's. Though plaintiffs cite evidence relevant to whether defendant might use that screen name (*e.g*., third-party testimony that her daughter talked about

---

information, unrelated to this litigation, while allowing plaintiffs to inspect her computer hard drive (Nos. 41, 47, 55); (2) the extent to which defendant was entitled to the production of additional documents from plaintiffs prior to her deposition (No. 73, 88); and (3) tailoring the circumstances of her ten-year-old daughter's deposition to mitigate unnecessarily frightening circumstances and other harmful effects (No. 100, 106).

In contrast to the defendants in several cases cited by plaintiffs, defendant has been reasonably forthcoming in response to plaintiffs' inquiries. Cf. Atlantic Recording v. Heslip, No. 4:06-CV-132-Y (N.D. Tex) Order of May 16, 2007, Ex. L to Plaintiffs' Response Brief, p. 12 (defendant refused to produce exculpatory evidence she claimed to possess and made unreasonable demands regarding production of her computer hard drive for inspection); Leadbetter, supra, note 1 (defendant destroyed computer hard drive alleged to have been used for purposes of infringement); Thompson, supra, n. 1 (defendant unresponsive to plaintiffs' inquiries for six months prior to lawsuit, did not deny allegations until filing counterclaim seeking fees, and would not provide information regarding his "adult daughter" whom he claimed was the actual infringer.)

9 - FINDINGS AND RECOMMENDATION

"Dragonball Z," the anime program featuring the character from which the screen name at issue was derived), that evidence was not obtained until a deposition taken on May 15, 2007, after plaintiffs learned that the third-party was a fan of the same character. Moreover, such evidence seems to provide a slim basis upon which to credit the third-party's denials when there is equally persuasive evidence why he might use the screen name at issue and otherwise be the actual infringer (*e.g.*, evidence of the content of his mySpace page (No. 107)). Again, the evidence is insufficient to determine who the actual infringer is, and plaintiffs admit they cannot explain the inconsistencies in the record. That is not the issue. These facts, however, give some indication of plaintiffs' intentions in regard to this lawsuit, which is relevant to the second Fogerty factor: motivation.

Defendant maintains that plaintiffs were never interested in identifying the actual infringer. She asserts that this case and others are initiated and maintained with insufficient investigation by plaintiffs and other similar entities for the primary purpose of chilling music downloading generally—including that which does not violate the Copyright Act or which falls into an area that has yet to be interpreted under, or addressed by amendment to, the Copyright Act. (That assertion is a central component of the separate action she initiated, in which she is seeking class certification.) To the extent plaintiffs took positions and conducted themselves in a manner that is consistent with defendant's theory, such as that described above, they demonstrated an improper motive, *i.e.*, a motive that is inconsistent with the purposes of the Copyright Act.

Plaintiffs' failure to contact a third party, who was potentially the actual infringer, until April 2007, as well as their position that his denials were credible, while defendant's were not, are also relevant to the third Fogerty factor—objective unreasonableness. Without applying the benefit of hindsight, these facts indicate that, in significant ways, plaintiffs did not conduct themselves in an

10 - FINDINGS AND RECOMMENDATION

objectively reasonable manner, *i.e.*, in a manner to be expected from a reasonable copyright holder pursuing relief from a party it believed to be infringing. In contrast to the copyright holders in cases they cite, plaintiffs did not pursue alternative avenues of relief, at a point when it would have been reasonable to do so. See, e.g., O'Leary, supra, n. 1 (record clearly demonstrated "that plaintiffs were only interested in one thing: knowing who was allegedly infringing their copyrights so they could bring an action against that person.")

Furthermore, although the parties and court appeared to be in agreement that a quick resolution of this matter was desirable, plaintiffs unreasonably rejected or sought to suppress evidence to the extent it tended to exonerate defendant, such as the expert's report concerning the examination of defendant's computer hard drive or her own statements about who had access to her computer. In a similar vein the weight plaintiffs ascribed to inculpatory evidence seemed unreasonably high. As described above, they appeared to readily accept the denial of infringement by a third party tied to the user name at issue even though the record discloses no reason to do so, nor any reason to wait so long to contact him after plaintiffs had evidence that implicated him as the actual infringer. The evidence plaintiffs possessed implicating the third party was at least as substantial as that implicating plaintiff at the time they filed suit. Based on the record before the court, there is no objectively reasonable basis for the distinction in the degree of plaintiffs' pursuit of relief from defendant versus the third party.

An objectively reasonable copyright holder would seek to hold liable and deter the person who actually violated the Copyright Act. Thus, even when evidence is appropriately characterized as inconclusive or ambiguous, an objectively reasonable copyright holder would be more diligent in pursuing, and less inclined to discredit, exculpatory evidence than plaintiffs appeared to be.

11 - FINDINGS AND RECOMMENDATION

The fourth Fogerty factor, is the need in particular circumstances to advance considerations of compensation and deterrence. In the present case, defendant incurred substantial fees before the claims against her were dismissed, including those incurred to file her motion for summary judgment and to respond to a motion to dismiss her counterclaims with prejudice. During that time, plaintiffs were either unable to obtain, or chose not to produce, significant evidence to support their claims. Other than late-acquired deposition testimony that defendant had listened to some of the recordings and artists that she was alleged to have downloaded, and that her daughter was familiar with the character on which the "gotenkito" username is likely based, it appears that plaintiffs had only its investigator's report identifying an IP address and Verizon's correspondence tying it to defendant. In other words, when plaintiffs dismissed their claims in June 2007, they apparently had no more material evidence to support their claims than they did when they first contacted defendant in February 2005. It's also possible that plaintiffs considered the production of further evidence in their possession to be more prejudicial than abandoning their case against defendant.

Defendant had raised significant issues concerning the accuracy and reliability of the alleged techniques plaintiffs employed to identify her. However, at the time plaintiffs' claims were dismissed, discovery was not complete, the evidentiary record was not fully developed and the court had not reached the merits. Once plaintiffs sought to dismiss their claims with prejudice, defendant stipulated. In poker terms, defendant didn't call; plaintiffs folded. Under these circumstances, is there good reason—consistent with the policies underlying the Copyright Act—to compensate defendant or to deter plaintiffs by awarding defendant a reasonable attorney fee?

Plaintiffs characterize the evidence of record as inconclusive, and note that the conflicting evidence has not been evaluated. Plaintiffs' Response Brief, p. 15. That is true. Whether that is

12 - FINDINGS AND RECOMMENDATION

because plaintiffs did not posses additional evidence to support their claim, or—for whatever reason—chose to dismiss their claim before they were required to disclose additional evidence in their possession, will not be known in the context of this action.

Whatever plaintiffs' reasons for the manner in which they have prosecuted this case, it does not appear to be justified as a reasonable exploration of the boundaries of copyright law. Parties pursuing novel defenses, theories of recovery, or the effect of developing technology should not be deterred if they do not prevail, because "it is important that the boundaries of copyright law be demarcated as clearly as possible" to serve its "purpose of enriching the general public through access to creative works." Fogerty, 510 U.S. at 527. In this case, plaintiffs dismissed their claims before any rulings on any significant legal issues under the Copyright Act, or the factual issues associated with plaintiffs' claim. Choosing that course, on this record, should be deterred in light of its potential chilling effect on the public's access to creative works. If this were to become a more typical course in prosecuting the type of allegations faced by defendant, it is reasonably foreseeable that members of the public would be more hesitant to use the Internet to share creative works in general, regardless of whether their specific conduct violated copyright law or occupied an area yet to be addressed by copyright law.

Copyright holders generally, and these plaintiffs specifically, should be deterred from prosecuting infringement claims as plaintiffs did in this case. Plaintiffs exerted a significant amount of control over the course of discovery, repeatedly and successfully seeking the court's assistance through an unusually extended and contentious period of discovery disputes. Nonetheless, after ample opportunity to develop their claims, they dismissed them at the point they were required to produce evidence for the court's consideration of the merits. Despite the protracted nature of this

action, at this point, as noted by plaintiffs, there is no explanation for the inconclusive nature of the evidence relevant to their claims.  Plaintiff's Opposition Brief, p. 15.  Plaintiffs assert that the unresolved, or unresolvable, status of the merits provides no basis for deterrence.  Id.  Plaintiffs are incorrect, because this case provides too little assurance that a prosecuting party won't deem an infringement claim unsupportable until after the prevailing defendant has been forced to mount a considerable defense, and undergo all that entails, including the incurring of substantial attorney fees.

There is also reason to compensate defendant in this case.  Her defense was primarily factual and not based on any developing legal theories.  Though it did not help to clarify the contours of copyright law, her participation was involuntary.  Her factual positions were consistent, and her legal stances were reasonable.  Any unwillingness on her part to make concessions to settle the copyright claims at an earlier point appears reasonable since she ultimately did not have to make any concessions in exchange for plaintiffs' stipulation to dismiss them with prejudice.

The Copyright Act provides for prevailing party fees despite the existence of other potential avenues to seek redress, such as the separate action defendant has initiated against plaintiffs and others.  Regardless of the outcome of that case, which raises issues of law and fact not present in this action, defendant is presently the prevailing party on plaintiffs' claim of infringement.  Because awarding her fees would serve the underlying purposes of the Copyright Act, her motion should be granted.

/ / /

/ / /

CONCLUSION

For these reasons as well as the arguments set forth in defendant's briefs, her motion for an award of attorney fees (No. 138) should be GRANTED.

SCHEDULING ORDER

The above Findings and Recommendation will be referred to a United States District Judge for review. Objections, if any, are due no later than October 9, 2007. If no objections are filed, review of the Findings and Recommendation will go under advisement on that date.

If objections are filed, any party may file a response within fourteen days after the date the objections are filed. Review of the Findings and Recommendation will go under advisement when the response is due or filed, whichever date is earlier.

DATED this 21st day of September, 2007.

      /s/Donald C. Ashmanskas
      DONALD C. ASHMANSKAS
      United States Magistrate Judge