**Kenneth R. Davis, II**, OSB No. 97113
davisk@lanepowell.com
**William T. Patton**, OSB No. 97364
pattonw@lanepowell.com
LANE POWELL PC
601 SW Second Avenue, Suite 2100
Portland, Oregon 97204-3158
Telephone: (503) 778-2100
Facsimile: (503) 778-2200

**Richard L. Gabriel**, Pro Hac Vice
richard.gabriel@hro.com
**HOLME ROBERTS & OWEN LLP**
1700 Lincoln Street, Suite 4100
Denver, Colorado 80203
Telephone: (303) 861-7000
Facsimile: (303) 866-0200

Attorneys for Plaintiffs Atlantic Recording Corporation, Priority Records LLC, Capitol Records, Inc., UMG Recording, Inc. and BMG Music

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| **ATLANTIC RECORDING CORPORATION**, a Delaware corporation; **PRIORITY RECORDS LLC**, a California limited liability company; **CAPITOL RECORDS, INC.**, a Delaware corporation; **UMG RECORDINGS, INC.**, a Delaware corporation; and **BMG MUSIC**, a New York general partnership,<br><br>                          Plaintiffs,<br><br>  v.<br><br>**TANYA ANDERSEN,**<br><br>                          Defendant. | Case No. 3:05-CV-933-AS<br><br>DECLARATION OF<br>DAVID B. MARKOWITZ |

I, David B. Markowitz, declare under the penalty of perjury as follows:

1.  I am an attorney practicing civil litigation in Portland, Oregon since 1974. I have been retained by the plaintiffs in this case to review the defendant's attorney fee petition and express opinions on that petition.

2.  A summary of my qualifications is attached as Exhibit 1 to this Declaration. This summary is part of our firm's web site at www.mhgm.com. Further information about the firm and my case experience can be found at that web site.

3.  I have been actively involved in issues relating to attorney fees disputes for over 20 years. This work started during the mid-1980's when I was hired by an insurance company to act as the supervising attorney for the lawyers who were defending several lawsuits against former partners of the Wolf Griffith law firm arising out of the failure of the Columbia Pacific Bank. My work included reviewing scores of invoices submitted by defense counsel and ultimately rejecting or approving the fee requests. In order to perform that work I conducted an informal survey of attorney fee rates in Oregon and made inquiries regarding prevailing billing practices. After completing that ongoing project, I began participating in many cases as an expert, mediator, arbitrator, or advocate on the subject of attorney fee disputes. I have participated in over 100 attorney fee disputes during the last 20 years, most of them in my role as an expert witness. I estimate that I have testified in state court attorney fee trials and prepared federal court attorney fee declarations on more than 50 occasions. This ongoing work has allowed me to become very familiar with the rates and billing practices that prevail in the Portland metropolitan area, particularly on matters relating to commercial litigation.

4.  In order to complete this assignment, I have read all of the pleadings and legal memoranda filed by the parties and the Court's opinions. I have been assisted by Sherri H. Hohman, a paralegal in our firm who has extensive experience in analyzing and preparing attorney fee petitions. Ms. Hohman frequently assists me in the analysis of attorney fee petitions where I am acting as an expert, arbitrator, or advocate. Under my direction Ms. Hohman gathered opinions discussing attorney fee awards in 2006 and 2007 in the United States District Court for the District of Oregon (hereafter "Oregon district court"). There are approximately 31 opinions during 2006 and 2007 in the Oregon district court which rule on attorney fee petitions.

I have reviewed copies of the opinions that discussed rates approved for the petitioners in these cases. Attached as Exhibit 2 is a summary of the cases which were located by Ms. Hohman and reviewed by me in connection with this analysis. Exhibit 2 was prepared by Ms. Hohman and I reviewed it together with the cases that are cited therein.

5.   I used the case opinions summarized in Exhibit 2 in forming a conclusion as to the appropriate reasonable hourly rate to set for the petitioner in this case. I also looked at the Lybeck Murphy web site to get biographical information and other data regarding each of the attorneys. I also considered the quality of the legal work which was reflected in the court file (including motions and legal memoranda) prepared by the defense attorneys.

### Lodestar Rate Analysis

Based upon this information and my experience with attorney fee rate issues, I have formed the following opinions regarding appropriate rates to be assigned in the lodestar analysis:

**Lory Lybeck and James Murphy - $285.00 per hour**

6.   In 2006, Judge Ashmanskas awarded $275.00 per hour for Mr. Lybeck's time in the case of <u>MW Builders v. Safeco</u>. That decision was approved by Judge Haggerty. I see no reason to deviate from the Court's assessment of Mr. Lybeck's appropriate rate that was set in 2006, except to increase that rate by ten dollars to reflect inflation. While Mr. Murphy is less experienced than Mr. Lybeck, I conclude that both partners should be assigned the same rate. My review of the recent Oregon district court opinions demonstrates that this conclusion is in keeping with and supported by fee awards for other attorneys of similar experience, reputation, and skill. For example, Jan Kitchel was assigned a rate of $300 per hour by Judge Anna Brown in 2006 in <u>McAleese v. Dean</u>. Mr. Kitchel has five years more experience than Mr. Lybeck, and is an extremely well respected and very competent litigator with the Schwabe firm. Similarly, Tom Sand was awarded $248.00 per hour by Magistrate Janice Stewart in 2007 in <u>Partner Connections v. NCH Partners</u>. I am also familiar with Mr. Sand, a senior litigator with the Miller firm who has excellent skills and reputation, and has been practicing since 1977. Similarly, Judge Garr King approved an attorney fee rate in 2007 in <u>Strand v. Automotive</u>

Page 3 -   DECLARATION OF DAVID B. MARKOWITZ

Machinists for attorney Daniel Ricks in the amount of $300 per hour. I am also familiar with Mr. Ricks (who coincidentally is Judge King's former partner) who has a 1978 bar admission. He has excellent reputation and skills. These opinions demonstrate that competent, skillful, highly regarded attorneys practicing commercial litigation during this time period in this court with more years of practice than Messrs. Lybeck and Murphy have been consistently awarded fees in the range of $250.00-$300.00 per hour. Based upon my review of all of these opinions and my assessment of Messrs. Lybeck and Murphy's skill and experience, I conclude that $285.00 per hour is the appropriate rate to set for the lodestar analysis in this case.

**Benjamin Justus and Brian Hodges - $175.00 per hour.**

7.  Judge Ashmanskas set the associate rate of $150.00 per hour in the MW Builders v. Safeco case. My review of the experience and skill of Messrs. Justus and Hodges, the rates assigned for associates in the decisions summarized in Exhibit 2, and my knowledge of prevailing associate billing rates in the Portland metropolitan area for commercial litigation in 2007 cause me to conclude that the appropriate lodestar rate for Messrs. Justus and Hodges is $175.00 per hour.

**Paralegals - $100 per hour.**

8.  Judge Ashmanskas set the paralegal rate in MW Builders v. Safeco at $95.00 per hour. Based upon my knowledge of prevailing paralegal rates, the skill and work assignments undertaken by the defense firm in this case, and the rates set in the decisions reflected on Exhibit 2, I conclude that $100 per hour is the appropriate lodestar rate for the defense team paralegals. There was no description of the paralegal experience either in the fee petition or on the defense firm's web site, so I was forced to assume an average level of skill and experience for the defense firm's paralegals.

### Lodestar Time Analysis

9.  In order to reach a conclusion regarding the appropriate number of hours for the lodestar analysis, I carefully reviewed every time entry reflected on the Lybeck Murphy fee

Page 4 -   DECLARATION OF DAVID B. MARKOWITZ

petition. Under my direction, Ms. Hohman also reviewed the time records in order to double check my analysis. My review of the time entries is detailed on Exhibit 3. Ms. Hohman and I established 13 categories to describe the work reflected in all of the time entries. I have concluded that there are five categories for which all time entries should be disallowed:

- **Vague – not sufficiently detailed to determine if reasonable and related to defense (60.30 hours)**

10.   There were a total of 60.30 hours of time entries that were so poorly detailed that neither I nor Ms. Hohman could reach a conclusion as to whether the work reflected in the time entry was reasonable and related to the defense. Obviously, it is the petitioner's burden to submit sufficiently detailed time records to allow an appropriate analysis. While most of the records allowed such an analysis, these particular entries were not sufficient and therefore should be disallowed.

- **Administrative time (25.50 hours)**

11.   These entries refer to non-legal work which should be part of the firm's overhead and not appropriately charged as attorney or paralegal time. For example, time relating to pro hac vice admission is firm overhead and administrative time and should not be properly charged either to the client or opposing parties.

- **Duplicate entries (19.60 hours)**

12.   There were few duplicate entries, but in my opinion there is no appropriate reason for charging for two lawyers' attendance at certain depositions and hearings.

- **Unrelated to defense, e.g. media (3.4 hours)**

13.   These were charges for participating in media interviews unrelated to the defense of the case.

Page 5 -    DECLARATION OF DAVID B. MARKOWITZ

- **Travel (12.0 hours)**

14. It is not appropriate to charge for travel to the local courthouse where the defendant has chosen an out-of-town attorney to defend her and there is no showing that other local attorneys could not have been available to competently handle her defense.

15. The total of the five categories of disallowed entries is shown on the last page of Exhibit 3. The total of these charges is 120.80 hours (22.09 percent of all of the time entries).

16. I have also concluded that the charges for the defendant attorneys' time spent on the counterclaims should not be awarded as a part of the prevailing party fee. These charges are itemized on Exhibit 3 and total 144.20 hours (26.37 percent of all of the charges). Certainly there are cases where the counterclaims are so entwined with the claims and defenses that they can be appropriately awarded as a part of the prevailing party award for the defense of the case. In my opinion, this is not such a case. The counterclaims to a large extent were independent of the plaintiff's case. The counterclaims would succeed or fail on legal issues and evidence that was unrelated to the defense of the plaintiffs' claim that Ms. Andersen improperly downloaded music. Simply stated, defendant's principal defense was that she did not do it and no one for whom she was responsible did it either. In order to prove that defense it was not necessary for her to maintain the counterclaims. In addition, most of the effort on the counterclaims appears to have been directed to disputes on legal issues that were wholly unrelated to the plaintiffs' claims and which will carry forward and be useable as a part of the new litigation which has been filed by the defendant. Further, defendant did not prevail on her counterclaims.

17. If the court agrees with my assessment that the work on the counterclaims should not be awarded as a part of prevailing party fees, the defendant's lodestar request should be reduced by an additional 144.20 hours (26.37 percent of the entire claim). This calculation is shown on the last page of Exhibit 3. The total reduction for the five categories of improper charges and the counterclaims is 265 hours (48.45% of the entire claim).

18.     I have concluded that the proper time entries which appear to have been reasonably related to the defense of the plaintiffs' claims total 174.30 hours (31.87 percent of the total fee asserted). Each of these entries appeared to have been appropriate: I did not find indication of excessive amount of time spent on the assigned projects, the work produced appeared competent and reasonable in light of the time spent on the projects, and the projects appeared to have been appropriately supervised and well timed with one exception. In my opinion, the summary judgment motion should have been filed earlier. Some of the time spent on other matters could have been avoided if the defense moved quickly to file the summary judgment motion. However, despite that conclusion, I am of the opinion that the court should allow all of the 174.30 hours (totaling 31.87 percent of time in initial fee petition) which I have determined to be appropriate. Again, this calculation is reflected on the last page of Exhibit 3.

19.     The final portion of defendant's claim for fees is the time spent working on the claim for attorney fees. Those time entries are also reflected on Exhibit 3 and total 107.60 hours (19.67 percent of the fee petition). In my opinion, that is an excessive amount of time to spend on seeking reimbursement for 174.30 hours of properly spent time. I believe that it is appropriate to reduce the time spent seeking attorney fees by 48.45 percent, which is equal to the percentage of time that I have concluded should be disallowed. That results in an award of 55.46 hours for efforts in connection with the attorney fee petition. The resulting total lodestar hours, including reduced attorney hours, are 229.76, again as reflected on Exhibit 3 and calculated on the last page. In sum, it is my opinion that the court should award 229.76 hours under the lodestar analysis as reflected in the detail shown on Exhibit 3.

### Lodestar Conclusion

20.     Exhibit 4 reflects the total lodestar analysis which I conclude to be reasonable and appropriate for the defense of the plaintiffs' claims. This analysis deducts from the petition amount (546.90 hours) five categories of inappropriate charges (120.80 hours), the charges devoted to the counterclaims (144.20 hours) and reduces the attorney fee claim (52.14 hours). The resulting hours and rates are shown on Exhibit 4, resulting in a total fee of $ 30,099.20. In

Page 7 -        DECLARATION OF DAVID B. MARKOWITZ

sum, my opinion is that the reasonable and appropriate attorney fee award to the defendant should be $30,099.20.

21.   I have also considered whether an adjustment should be made to this lodestar analysis to either increase or decrease the lodestar award. In my opinion no increase or decrease would be appropriate. Although I believe that the work would have been more efficiently handled if the summary judgment motion had been filed earlier, I don't believe that the lodestar should be reduced. I also do not believe that an increase in the lodestar is justified because this is not the type of rare and exceptional case which needs to be present in order to justify an upward adjustment of the lodestar. Such an adjustment would require specific evidence that the lodestar is unreasonably low under the circumstances of this case. In my opinion, the lodestar is not unreasonably low. It reflects the total charges that should reasonably have been spent by a firm that was defending the plaintiffs' claim, rather than laying the groundwork for claims against the recording industry. Further, if there is any reality to the defendant's counterclaim allegations, the defense attorneys should make a very substantial fee in the continuing litigation against the industry. There is no need to reward the defense lawyers in this case with a recovery in excess of the lodestar. $30,099.20 is full and adequate compensation for the defense counsel for all efforts reasonably expended in defense of plaintiffs' claims.

DATED this 6th day of March, 2008.

_____
David B. Markowitz

Page 8 -    DECLARATION OF DAVID B. MARKOWITZ