FILED'08 MAY 14 09:49USDC-OR

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ATLANTIC RECORDING
CORPORATION, a Delaware corporation;
PRIORITY RECORDS, LLC, a California
limited liability company; CAPITOL
RECORDS, INC., a Delaware corporation;
UMG RECORDINGS, INC., a Delaware
corporation; and BMG MUSIC, a New York
general partnership,

                                   Plaintiffs,

             v.

TANYA ANDERSEN,

                         Defendant.

_____

Civil No. 05-933-AC

FINDINGS AND RECOMMENDATION

ACOSTA, Magistrate Judge:

*Findings and Recommendation*

Presently before the court is Tanya Andersen's Motion to Fix Amount of Attorney's Fees and her Bill of Costs. For the reasons that follow, Andersen's motion for attorney fees should be granted, in part, and denied, in part, and her cost bill should be approved.

*Background*

Atlantic Recording Corporation, Priority Records, LLC, Capitol Records, Inc., UMG Recordings, Inc. and BMG Music (collectively "Atlantic Recording") brought the present action against Tanya Andersen, alleging that she used her personal computer and the Internet to download and share sound recordings, thereby infringing on Atlantic Recording's rights under the Copyright Act. Atlantic Recording had sought damages, injunctive relieve and attorney fees. As characterized by Atlantic Recording in their first discovery motion, filed approximately eight months after they initiated this action:

> On May 20, 2004, Plaintiffs' investigators detected an individual with the username "gotenkito@Kazaa" using the Kazaa online media distribution system over a P2P file-sharing network. This individual had 1,288 music files on her computer and was distributing them to the millions of people who use peer-to-peer networks. On information and belief, the individual previously downloaded all or many of the sound recordings without the permission of the record company copyright owners. Plaintiffs' investigator further determined that the individual used the Internet Protocol ("IP") address 4.41.209.23 to connect to the Internet.

> Plaintiffs then filed a "John Doe" complaint against this individual and, after obtaining a court order, issued a subpoena to Verizon Internet Services, Inc. ("Verizon") in order determine who used the above-referenced IP address. Verizon identified Tanya Andersen. On June 21, 2005, Plaintiffs filed a Complaint against Tanya Andersen for copyright infringement.

(Mem. Supp. Pls.' Mot. Compel 2-3, March 8, 2006.)

Andersen denied the allegations and asserted several counterclaims against Atlantic Recording. From the beginning and throughout the case, Andersen maintained that this is a case of mistaken identity, and ultimately, that Atlantic Recording was unconcerned with discovering the true identity of the actual infringer. *(See, e.g.,* Con. Stat. Facts Supp. Mot. Summ. J. ¶¶ 3, 12, 22, May 14, 2007.) After providing Atlantic Recording the opportunity to inspect her computer hard drive and to depose her and her minor daughter—the only other member of Andersen's household—Andersen filed a motion for summary judgment. Atlantic Recording's opposition was to be filed by June 1, 2007. On that date, almost two years after filing their Complaint, Atlantic Recording voluntarily dismissed, with prejudice, their claims against Andersen. *See Atlantic Recording, et al., v. Andersen,* No. 05-933 (D. Or. June 1, 2007) (Notice of Stipulated Dismissal with Prejudice).

Three weeks later, on June 22, 2007, Andersen initiated a separate action in this District against Atlantic Recording and three other parties,[1] *Andersen v. Atlantic Recording Corp., et al.,* CV No. 07-934-BR (D. Or. filed June 22, 2007), seeking class certification. In that action, Andersen alleges claims for: (1) negligence; (2) fraud and negligent misrepresentation; (3) violation of the Oregon Racketeer Influenced and Corrupt Organization Act; (4) violation of the federal Racketeer Influenced and Corrupt Organization Act; (5) abuse of legal process; (6) malicious prosecution; (7) intentional infliction of emotional distress; (8) violation of the Computer Fraud and Abuse Act, 18, U.S.C., § 1030, *et seq.*; (9) trespass to chattels; (10) invasion of privacy; (11) libel and slander; (12) deceptive business practices; and (13) misuse of copyright laws. Andersen's Complaint identifies

---

[1] The three defendants that are not plaintiffs (or parties) in the present action are: (1) the Recording Industry Association of America; (2) Safenet, Inc., f.k.a., Media Sentry, Inc.; and (3) Settlement Center, LLC.

claims previously asserted as counterclaims in the present action and allegations concerning Atlantic Recording's recent conduct in the present action.

On September 21, 2007, Judge Ashmanskas issued a decision recommending that Andersen's Motion to Voluntarily Dismiss Counterclaims without prejudice be granted so that those claims may be heard as part of *Andersen v. Atlantic Recording Corp., et al.*; and that her Motion for an Award of Attorney's Fees to Tanya Andersen seeking prevailing party fees, in light of Atlantic Recording's stipulation to dismiss their case against her with prejudice, be granted. Judge Ashmanskas's decisions were adopted by Judge Redden in separate Opinion and Orders dated January 14, 2008, and January 16, 2008, respectively. Pursuant to this court's decision that Andersen was the prevailing party for purposes of 17 U.S.C. § 505, and entitled to an award of attorney fees in this action, Andersen now requests an award of attorney fees in the amount of $298,995.00 and costs in the amount of $5,387.05.

*Legal Standard*

I. Attorney Fees

The Copyright Act provides, in relevant part, that "the court may . . . award a reasonable attorney's fee to the prevailing party as part of costs." 17 U.S.C. § 505. Awarding fees under this provision is a matter of the court's discretion, but it is to be applied in an evenhanded manner, *i.e.*, "[p]revailing plaintiffs and prevailing defendants are to be treated alike." *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 (1994).

The calculation of a reasonable fee award usually involves two steps. First, the court must calculate the "lodestar figure" by taking the number of hours reasonably expended on the litigation and multiplying it by a reasonable hourly rate. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983);

*Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1119 (9th Cir. 2000). The fee applicant bears the burden of documenting the appropriate hours expended in the litigation and must submit evidence in support of those hours worked. *See, e.g., Gates v. Deukmejian*, 987 F.2d 1392, 1397 (9th Cir. 1993).

In determining the lodestar figure, the court may consider many of the factors set forth in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975). These factors include the novelty or difficulty of the case, the preclusion of other employment, time limitations, the amount at stake, the results obtained, and the undesirability of the case. *Id.* However, whether the fee is fixed or contingent is no longer a factor in determining the basic fee. *Davis v. City and County of San Francisco*, 976 F.2d 1536, 1549 (9th Cir. 1992), *vacated in part on other grounds*, 984 F.2d 345 (9th Cir. 1993). While there is a strong presumption that the lodestar figure represents a reasonable fee, *see, e.g., Miller v. Los Angeles County Bd. of Educ.*, 827 F.2d 617, 621 (9th Cir. 1987), the court may adjust the lodestar upward in "rare" and "exceptional" cases. *See Pennsylvania v. Citizens' Council for Clean Air Delaware Valley*, 478 U.S. 546, 565 (1986). The court must review the petition for reasonableness, even if no objection has been raised to the number of hours billed or the hourly rate used. *Gates*, 987 F.2d at 1401; "Message From the Court Regarding Attorney Fee Petitions," United States District Court, District of Oregon, http://www.ord.uscourts.gov/attorney_fee_statement.pdf (last visited May 12, 2008). The district court possess "considerable discretion" in determining the reasonableness of a fee award. *Webb v. Ada County*, 195 F.3d 524, 526 (9th Cir. 1999).

II.  Bill of Costs

Rule 54(d) provides that "costs other than attorneys' fees shall be allowed as of course to the prevailing party unless the court otherwise directs[.]" In the Ninth Circuit, this rule "creates a

presumption in favor of awarding costs to a prevailing party[.]" *Association of Mexican-Am. Educators v. California*, 231 F.3d 572, 591 (9th Cir. 2000) (*en banc*). Unless otherwise authorized by statute or contract, the types of costs that may be awarded under Rule 54(d)(1) are limited to those enumerated in 28 U.S.C §§ 1920 and 1821, and a court may decline to award costs as listed in those statutes. *See Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 445 (1987). However, the trial court has wide discretion in awarding costs under Fed. R. Civ. P. 54(d) and is "free to construe the meaning and scope of the items enumerated as taxable costs . . . ." *Kelley v. Sears, Roebuck, and Co.*, No. 01-1423-ST, 2004 WL 1824121, *3 (D. Or. Aug. 10, 2004).

Pursuant to Local Rule 54.1(a)(1)(A) and (B), "[t]he prevailing party must provide a "detailed itemization of all claimed costs" and "appropriate documentation." In addition, LR 54.1(a)(2) states that the cost bill must be verified as required by 28 USC § 1924, which requires an affidavit that the items within the cost bill are correct, have been necessarily incurred in the case, and that the services for which fees have been charged were actually and necessarily performed. Simply filing a list of charges without supporting documentation is not "appropriate documentation." *See, e.g., Primerica Life Ins. Co. v. Ross*, No. 06-763-PK, 2006 WL 3170044, *3 n.2 (Nov. 1, 2006)(statement of total amount of costs unaccompanied by information that would allow court to exercise discretion to determine reasonableness of costs not sufficient documentation).

*Discussion*

By her motion, Andersen seeks an order approving, as reasonable, the hourly rates of $375 for partners, $250 for associates and $150 for paralegals; and a finding that the 546.9 hours spent by Andersen's counsel was reasonable and necessarily incurred in the defense of this action. Additionally, Andersen also seeks a multiplier of two times the requested hourly rates, thereby

resulting in an attorney fees award totaling $298,995. Finally, Andersen requests that the court approve the Bill of Costs she submitted and direct the clerk to execute the bill and tax costs against Atlantic Recording in the amount of $5,387.05.

Atlantic Recording maintains that the fees sought by Andersen are excessive and unsupported by appropriate evidence. It challenges the number of hours expended, the hourly rates requested and the application of a multiplier as unwarranted. According to Atlantic Recording, any attorney fee award must be reduced dramatically and should be no more than $30,099.22. Atlantic Recording also requests that the court deny Andersen's Bill of Costs in its entirety because none of the costs are properly compensable.

I. Attorney Fees

Andersen arrived at the $298,955 figure by multiplying the total hours expended on her defense by the respective hourly rates, by a multiplier of two. Specifically, Andersen submitted a request for the following hours and rates:

| Attorney/Experience | Hours | Rate/Hour | Total |
|---|---|---|---|
| Lory R. Lybeck/24 | 105.70 | $375 x 2 | $79,275 |
| James P. Murphy/19 | 23.20 | $375 x 2 | $17,400 |
| Katherine L. Felton/7 | 1.10 | $250 x 2 | $550 |
| Brian T. Hodges/6 | 137.20 | $250 x 2 | $68,600 |
| Brian C. Armstrong/6 | 10.00 | $250 x 2 | $5,000 |
| Benjamin R. Justus/3 | 236.30 | $250 x 2 | $118,150 |
| R. Lynne Jardine (paralegal) | 3.00 | $150 x 2 | $900 |
| Loren Van De Mortel (paralegal) | .20 | $150 x 2 | $60 |
| Elizabeth J. Curtis (paralegal) | 19.60 | $150 x 2 | $5,880 |
| Bryan Case (paralegal) | 10.60 | $150 x 2 | $3,180 |

A.    Hours Expended

Andersen's fee petition seeks the court's approval for 546.9 hours of work undertaken by six lawyers and four paralegals. Atlantic Recording challenges the hours expended and contends that over half of the requested hours are non-compensable because the hours are for work unrelated to the defense of the copyright infringement claim. Additionally, Atlantic Recording argues that the billing entries are not sufficiently detailed to determine the reasonableness of the time expended and, therefore, some hours must be excluded.

1. Non-Compensable Hours

a. Counterclaims

Andersen seeks an award of fees for 144.2 hours expended on her counterclaims against Atlantic Recording. Atlantic Recording argues that those hours are not recoverable here because Andersen's counterclaims were independent of her copyright claim and, regardless, she has not yet prevailed on those claims. According to Atlantic Recording, Andersen sought voluntary dismissal of those counterclaims in order to pursue them in a separate action, and an award of fees on those claims is premature as there has been no adjudication of those counterclaims.

A party that prevails on a claim under the Copyright Act may recover attorney's fees for the copyright claims and *any other related claims*. *See The Traditional Cat Ass'n, Inc. v. Gilbreath*, 340 F.3d 829, 833 (9th Cir. 2003) (emphasis added). The Ninth Circuit has stated that claims are related when they arise from the same course and conduct. *See Entm't Research Group, Inc. v. Genesis Creative Group, Inc.*, 122 F.3d 1211, 1230 (9th Cir. 1997). Claims are unrelated when they allege "'distinctly different claims for relief that are based on different facts and legal theories' from the other causes of action in the overall litigation." *Id.* (quoting *Hensley*, 461 U.S. at 434).

The court previously determined that Andersen was the prevailing party and entitled to attorney fees under 7 U.S.C. § 505. *See Atlantic Recording Corp. v. Andersen*, No. 05-933-AS, 2008 WL 185806, at *1-2 (D. Or. Jan. 14, 2008). In *Hensley,* 461 U.S. at 433, the Supreme Court proscribed a two-step process for calculating attorney's fees in a case of partial or limited success. A court must consider (1) whether "the plaintiff fail[ed] to prevail on claims that were unrelated to the claims on which he succeeded," and (2) whether "plaintiff achiev[ed] a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award." *Id.* at 434. Deductions based on limited success are within the discretion of the district court. *See Sorenson v. Mink,* 239 F.3d 1140, 1147 (9th Cir. 2001).

After carefully reviewing the record here, the court concludes that Andersen's counterclaims involved the same conduct and were sufficiently related to her defense of the copyright infringement case. Atlantic Recording claimed that Andersen had downloaded from her personal computer various digital music files in violation of its copyrights. Andersen consistently denied that she had downloaded any music, especially the type Atlantic Recording had identified; attempted to discuss the matter with Atlantic Recording or its agents; and, ultimately, offered Atlantic Recording the opportunity to examine her personal computer and to depose her and her daughter. Atlantic ignored Andersen's offer and sued her, thus forcing Andersen to find legal counsel and join the legal battle that Atlantic Recording appeared committed to undertaking. In defending herself in that litigation, Andersen asserted counterclaims reasonably related to the manner in which, she claimed, Atlantic Recording purportedly identified her, her personal computer, and the music she allegedly downloaded; the methods Atlantic Recording allegedly used to identify her; and the strategy she contends motivated Atlantic Recording's lawsuit against her. Andersen's counterclaims were

reasonably related and factually tied to the claim on which she prevailed in this case, such that she is entitled to attorney fees for work on those counterclaims, until June 1, 2007, when the Notice of Stipulated Dismissal was signed by the parties.

Atlantic Recording argues that Andersen is not entitled to recover fees on her counterclaims because her counterclaims were not adjudicated before it voluntarily dismissed its claim against her, and it cites *Twentieth Century Fox Film Corp. v. Entertainment Distributing*, 429 F.3d 869 (9th Cir. 2005), for the proposition that fees on counterclaims in copyright actions are awardable only if the party prevails on the counterclaims. (Pls.' Sur-Reply 3.) However, this argument misapplies *Twentieth Century Fox*; the Ninth Circuit's holding on this point contains no prerequisite that the counterclaims must have been finally adjudicated, only that the counterclaims "'involve a common core of facts or are based on related legal theories.'" 429 F.3d at 884 (quoting *Webb v. Sloan*, 330 F.3d 1158, 1168 (9th Cir. 2003). Furthermore, Atlantic Recording's argument ignores well-established precedent that a prevailing party may recover attorney fees for time spent on factually related unsuccessful claims, *see, e.g., Banta v. City of Merrill, Oregon*, No. 06-3003-CL, 2007 WL 3543445, *3 (D. Or. Nov. 14, 2007), and for services spent on unsuccessful claims that contribute to the party's ultimate victory in the lawsuit. *Schwartz v. Secretary of Health and Human Services*, 73 F.3d 895, 903 (9th Cir. 1995). Given this authority, it would be illogical to conclude that a prevailing party may recover attorney fees for related claims if it loses those claims but not if those claims were not finally determined before the party prevailed. And, given the nature of Atlantic Recording's original claims against Andersen and its ultimate voluntary dismissal of those claims, the court cannot conclude that Andersen's pursuit of her counterclaims did not contribute to her ultimate success in obtaining Atlantic Recording's dismissal of its case against her.

Atlantic Recording also argues that Andersen's counterclaims were separable from its claims as evidenced by Andersen's subsequent lawsuit against it now pending in this district, but the court rejects this argument as well. As explained above, Andersen's counterclaims were factually related to the claim on which she prevailed. *See Kelley*, 2004 WL 1824121, *1 (claims are unrelated if they are "entirely distinct and separate" from the claims on which the party prevailed)(citing *Sorenson v. Mink*, 239 F.3d 1140, 1147 (9th Cir. 2001)(internal quotation marks omitted).[2]

Accordingly, hours incurred after the June 1, 2007, dismissal with prejudice were not reasonably incurred in this case and should be subtracted from the hours for which she seeks fees. Andersen's request for 144.2 hours for counterclaims should be reduced by the 36.6 hours[3] that were billed after June 1, 2007.

### b. Vague Billing Entries

Atlantic Recording next challenges 60.3 of Andersen's hours as "so vague that a reasonable fee cannot be determined without resorting to speculation." (Pls.' Br. 10-11.) Atlantic Recording correctly states that, as the fee applicant, Andersen "bears the burden of documenting the appropriate hours expended in the litigation and must submit evidence in support of those hours worked." *Gates*, 987 F.2d at 1405. In support, Atlantic Recording has submitted a declaration from David B. Markowitz, a civil attorney retained to review Andersen's fee petition. (Markowitz Decl., March

---

[2] The court's finding is limited to the question of whether Andersen's counterclaims are reasonably related to the claim on which she prevailed in this case and to her entitlement to attorney fees as prevailing party.

[3] Andersen argues that hours should not be excluded simply because the billing statement entry includes the word "counterclaim." In the absence of documentation from Andersen allocating the blocks of time, the court cannot properly determine what parcel of the of time entered should be apportioned to counterclaim work versus one of the other items listed. Andersen failed to meet her burden with respect to those requested fees.

6, 2008.) At paragraph 10, Markowitz states, in part: "There were a total of 60.30 hours of time entries that were so poorly detailed that neither I nor [his paralegal] could reach a conclusion as to whether the work reflected in the time entry was reasonable and related to the defense." (Markowitz Decl. ¶ 10.)

Andersen maintains that the time sheets are not vague and the invoice provides sufficient information for the court to award attorney fees. By example, she points to the delineation of specific tasks set forth in several of the block billing entries. Andersen also explains that an "individual entry must be read in context with adjacent entries. . . ." (Def.'s Resp. Brief 6-7.).

Having carefully reviewed the parties' arguments on this question and the submitted time sheets, the court agrees with Atlantic Recording that certain of the memo entries describing the work are too generalized to provide any real information as to what work the attorney or paralegal performed. Many of the disputed entries are described as "manage," "review," "collect," "revise" or "various," precisely the type of vague description that this court has warned attorneys "makes it nearly impossible to assess the reasonableness of the requested time." Message From The Court Regarding Attorney Fee Petitions, available at http://www.ord.uscourts.gov/attorney_fee_statement.pdf, at 1-2 (last visited May 12, 2008). Other disputed entries block bill for as many as four tasks at a time, with a lump sum of hours, in direct contravention of this court's instruction that "members of the bar record time on particular individual tasks and support their fee petitions with a level of documentation that allows the Court, and opposing counsel, to adequately review the reasonableness of the time spent on a single task." *Id.*, at 1. *See also Klamath Siskiyou Wildlands Center v. Bureau of Land Management,* No. 05-3094-CL, 2008 WL 356843, *3 (D. Or. Feb. 7, 2008)(block billing "interfere[s] with the court's ability to fully

[LB]

discharge its review function."). Alternatively, some of the challenged entries are appropriate and reasonable, and provided the required specificity of task and preciseness of time spent on that task.

In sum, after a careful review of Exhibit 3, "Summary of Claimed Attorney Fees by Category," to the Markowitz declaration and Exhibit C, "Professional Services Invoice," to the Lybeck declaration, the court has identified 28.2 requested hours that are too vague and fail to provide sufficient information upon which the court can evaluate the Rule 54 factors. Accordingly, those hours should be deducted from the total attorney hours requested by Andersen on the ground that those hours are not sufficiently documented to determine whether they were necessary and reasonable.

The billing entries that should be disallowed are as follows:

| | | | |
|---|---|---|---|
| 9/13/2005 | BTH | Telephone call from opposing counsel re extension to file response; draft stipulation; legal research re motion to dismiss; draft motion for extension to respond to complaint. | 5.20 |
| 10/3/2005 | BTH | Manage media contacts; review emails; collect documents; revise and edit pleadings. | 3.10[4] |
| 10/31/2005 | LRL | File objection; telephone conference with Miller. | .80 |
| 11/23/2005 | BTH | Review studies of Kazaa. | 1.50 |
| ½7/2006 | BTH | Edit and revise filings. | 2.50 |
| 1/30/2006 | BTH | Revise pleadings file. | 1.50 |
| 1/3/2007 | LRL | Email to client. | 1.50 |
| 3/20/2007 | LRL | Work on response to motion to dismiss; telephone call from Patton; telephone call to court regarding sending motions; analyze Media Sentry exclusion argument in Lindor. | 2.70 |

---

[4] The court notes that time expended by a party's attorney in communicating with the media is not recoverable as part of the party's attorney fee award. *See* Section A.1.e., *infra*.

| 3/28/2007 | LRL | Various emails with opposing counsel; prepare for deposition of client; various telephone calls with client regarding deposition. | 5.70 |
| 6/6/2007 | LRL | Various emails with opposing counsel; receive and review deposition transcript of Kesia Andersen; conference with Justus. | 2.60 |
| 10/17/2007 | LRL | Meeting with Justus regarding briefing and emails | 1.10 |

c. Administrative Tasks

Atlantic Recording contends that 25.5 hours of Andersen's paralegal hours are not recoverable because it "is well-settled that costs arising from the performance of administrative or secretarial tasks are considered overhead expenses reflected in the hourly billing rate and are not properly reimbursable in a fee award." (Pls.' Br. 11.) (citing *Missouri v. Jenkins*, 491 U.S. 274, 288 n.10 (1989)). In his declaration, Markowitz refers to "administrative time" and states: "These entries refer to nonlegal work which should be part of the firm's overhead and not appropriately charged as attorney or paralegal time." (Markowitz Decl. ¶ 11 and Ex. 3.)

In *Missouri*, the Supreme Court held that a "'reasonable attorney's fee' provided for by statute should compensate the work of paralegals, as well as that of attorneys." *Id.* at 285. Provided that it is "the prevailing practice in a given community," fees for work performed by non-attorneys such as paralegals may be billed separately, at market rates." *Id.* at 287. Similarly, even clerical or secretarial work is compensable if it is customary to bill such work separately, however, those tasks "should not be billed at the paralegal rate, regardless of who performs them." *Id.* at 288 n.10. The purpose of this principle is to ensure that attorneys recover only those costs that are not already built into their hourly fees.

Here, Andersen has failed to show that it is the custom in Portland separately for the work performed by secretaries and clerical staff and, in fact, the practice is to the contrary. *See, e.g.*,

Page 14 - FINDINGS AND RECOMMENDATION                                      [LB]

*Strand v. Automotive Machinists Pension Trust*, No. 06-1193-PK, 2007 WL 2029068, *5 (D. Or. July 11, 2007)("Costs associated with clerical tasks are typically considered overhead expenses reflected in the hourly billing rate, and are not properly reimbursable."); *Jacobs v. Local Union 48, IBEW*, No. 94-1544-JE, 2002 WL 31470403, *3 (D. Or. March 21, 2002)(clerical and secretarial work is not paralegal work and should be absorbed in the attorney's hourly rate "as part of normal office expenses"); *Frevach Land Co. v. Multnomah County, Dept. of Envir. Srvcs.*, No. 99-1295-HU, 2001 WL 34039133, *12 (D. Or. Dec. 18, 2001)(costs associated with clerical tasks are typically considered overhead reflected in attorney's hourly rate and plaintiff failed to show that prevailing practice in this district is otherwise). In any event, she is not entitled to a paralegal rate for that work. *See Jacobs*, 2002 WL 31470403, *3 ("The term 'paralegal' implies that work performed by persons so designated is of a quasi-legal nature, and requires a level of expertise for which a higher rate of pay is appropriate."). Indeed, Andersen has offered no evidence to rebut the Markowitz declaration, including Exhibit 3, that the challenged work was other than secretarial or clerical and deserving of the paralegal rate. Accordingly, Andersen's request for paralegal hours should be reduced by the 25.5 hours, the time spent pursuing administrative tasks. *See, e.g., Harris v. L & L Wings, Inc.*, 132 F.3d 978, 985 (4th Cir. 1997) (approving district court's elimination of hours spent on secretarial tasks from its lodestar calculation).

### d.  Duplication of Time

Atlantic Recording challenges 19.6 hours of Andersen's hours as duplicative. Relying on cases from this district, Atlantic Recording contends that "this Court has reduced a fee award where multiple attorneys billed time on a 'relatively straightforward copyright infringement case that did not involve complicated facts or novel legal issues.'" (Pls.' Br. 11-12 (quoting *Olson v. Tenney*, No.

05-1296, 2007 U.S. Dist. Lexis 15478, at *16 (D. Or. March 1, 2007).) Atlantic Recording argues that Andersen proffered the simplest defense possible, innocence, and her failure to account for duplication in her fee petition must result in a deduction of those hours.

Counsel for the prevailing party must make a good faith effort to exclude duplicative hours from a fee request. *National Warranty Insurance Company, RRG v. Greenfield*, No. 97-1654-ST, 2001 WL 34045734, *4 (D. Or. Feb. 8, 2001). The court has a similar obligation to exclude hours that are "excessive, redundant, or otherwise unnecessary" in calculating the number of hours reasonably expended. *Hensley,* 461 U.S. at 434; *Van Gerwen v. Guarantee Mut. Life Co.,* 214 F.3d 1041, 1045 (9th Cir. 2000). District courts may reduce attorney's fees if the court finds that they are duplicative or unreasonable. *Sorenson,* 239 F.3d at 1146.

Here, slightly less than half of the challenged hours (8.7 hours) are for a second attorney to appear before this court on December 12, 2006, for oral argument on Andersen's Motion for Sanctions and Atlantic Recording's Motion to Compel. The court finds that it was reasonable for two attorneys to appear on behalf of Andersen to argue those two motions. With the exception of 1.5 hours, the balance of the challenged hours (9.4 hours) were charged for deposition work. The hours were shared by one partner, Lybeck, and one associate, Justus, yet Atlantic Recording seeks to exclude both attorneys' hours for the deposition fees. The evidence in the record supports the conclusion that it was reasonable for both Lybeck and Justus to attend the depositions challenged here. The remaining 1.5 hours are for work performed by one attorney, Justus. The simple fact of more than one entry for the same subject matter, without more, does not render the work duplicative

and ineligible for attorney fees. Atlantic Recording's request to reduce the number of hours by 19.6 as duplicative should be denied.[5]

### e.  Unrelated Tasks

Atlantic Recording challenges 3.4 hours of Andersen's hours on the ground that the time was spent "on matters wholly unrelated to the litigation of the merits of the case," including time spent on media interviews. (Pls.' Br. 12.). The court agrees that an award of attorneys' fees should not include amounts for contact with the media. *See Bonnichsen, et al. v. United States, et al.*, No. 96-1484-JE, 2004 WL 2901204, *9 (D. Or. Dec. 15, 2004)("[M]edia contact is 'the kind[] of activit[y] that attorneys generally do at their own expense.")(quoting *Gates v. Gomez*, 60 F.3d 525, 535 (9th Cir.1995). Based on the record, the court is satisfied that this action could have been successfully defended without the media communications. Nor does Andersen contend that any benefit was derived from the media communications. Thus, an award of attorney fees for work related to the media is not warranted and Andersen's hours expended should be reduced by 3.4 hours, the time spent on media-related work.

### f.  Travel Time

Atlantic Recording challenges 12 hours of Andersen's hours on the ground that travel time incurred by the out-of district counsel is not compensable. (Pls.' Br. 13.) Atlantic Recording

---

[5] Andersen's theory of defense, innocence, might have been simple, as Atlantic Recording asserts, but the implementation of it was not, as the extensive court record demonstrates. That Atlantic Recording itself utilized forensic computer experts and sophisticated technology in purportedly identifying Andersen and her personal computer proves that Andersen's efforts to defend Atlantic Recording's lawsuit were not as straightforward as it suggests. *Olson v. Tenney*, upon which *Atlantic Recording* relies on this point, is clearly distinguishable because the question there was whether or not substantial similarity existed between defendants' published novel and plaintiff's original script for a musical production. 466 F. Supp. 2d 1230, 1233-34, 1235(D. Or. 2006).

contends that, absent a showing by Andersen that "none of the many qualified attorneys in the District of Oregon were willing to take her case" the 12 hours for travel are not compensable. (Pls.' Br. 13.)

In response to Atlantic Recording's brief opposing an award of fees for travel, Andersen filed a declaration in support of her request. (Tanya Andersen Decl., March 11, 2008.) In her declaration, Andersen details her efforts to retain counsel to defend her against Atlantic Recording's claim for copyright infringement. (Andersen Decl. ¶¶ 2-8.) Andersen contacted three different local lawyers. The first advised that "this was a new type of law and there wasn't really anyone in Oregon that knew much about it yet." (Andersen Decl. ¶ 3.) That attorney recommended that Andersen allow a default judgment and declare bankruptcy because it was "big business against the little guy." (Andersen Decl. ¶ 4.). Andersen next contacted a bankruptcy attorney and was informed by the paralegal that "she had no idea what the complaint was" and "she did [not] know what the office could do." (Andersen Decl. ¶ 5.) Finally, Andersen contacted a lawyer with purported copyright law experience and was informed by "someone in the lawyer's office" that they did not know what Andersen was talking about. (Andersen Decl. ¶ 6.) In addition to contacting the three lawyers, Andersen wrote letters to both Oregon Senators and her Congressman, who informed her that they would be unable to assist her. (Andersen Decl. Attachments.) Nothing in the materials and declarations Atlantic Recording submitted contradict or cast suspicion upon Andersen's representations of her extended efforts to find legal counsel to defend herself against the lawsuit that Atlantic Recording brought in implementing an apparent nationwide strategy to combat unlawful music file downloading.

Andersen has established that her request for 12 hours for counsel's travel time was reasonable. In this district, it is customary for attorneys to bill clients for reasonably incurred travel time. *See, e.g., National Warranty Insurance Company, RRG*, 2001 WL 34045734, *6 (acknowledging same). Furthermore, Atlantic Recording's formidable resources and subject-matter experience likely explain Andersen's inability to find a Portland-area attorney willing to represent her in this matter, and further supports a finding that this travel time was reasonable. Accordingly Atlantic Recording's request to deduct 12 hours for travel time should be denied.

### 2. Time Pursuing Attorney Fees

Finally, Andersen seeks an award of fees for 107.6 hours expended on the request for attorney fees in this case. Atlantic Recording contends that the hours requested for work on the award of attorney fees is excessive in relation to the number of hours expended on the merits of the case. Atlantic Recording maintains that 265 of the hours requested are not compensable and should be excluded from calculation of the lodestar amount. (Pls.' Br. 13.) Under Atlantic Recording's analysis, because 265 hours equal 48.45% of the total request for 546.9 hours, the 107.60 attorney fee hours should be reduced by 48.45% to 55.46 hours. (Pls.' Br. 13-14.) Thus, Atlantic Recording asks the court to make a proportionate reduction equal to the percentage of time the court excluded above.

First, it is well-settled that a prevailing party may recover attorney fees incurred in preparing and litigating its fee petition, *Nichols v. Frank*, No. 89-635-FR, 1992 WL 16352, *4 (D. Or. Jan. 17, 1992)(citing *Clark v. City of Los Angeles*, 803 F.2d 987, 992 (9th Cir. 1986), and Atlantic Record does not question this principle. Nor does Atlantic Recording offer any authority for the proposition that the hours expended on seeking attorney fees must be reduced in proportion to the number of

hours disallowed; in fact, Atlantic Recording cites to no authority that the hours requested for reimbursement may not exceed a certain percentage of the overall request. *But see Trimper v. City of Norfolk, Va.*, 58 F.3d 68, 77 (4th Cir. 1995) ("Thus, we find that the district court did not err in reducing the amount of recoverable fees for the fees phase of the lawsuit to 20 percent of the amount recovered for the merits phase of the lawsuit.")

While 107.60 hours is a significant number of hours expended to achieve an award of fees, Andersen has adequately documented the effort with billing records, declarations, and other evidence in the record. Other than a bald claim of excessiveness, Atlantic Recording raises no other challenge to the fees requested for reimbursement. Indeed, Atlantic Recording does not challenge any particular entry as non-compensable; rather, its challenge is generalized. Though it is Andersen's burden to show that the requested fees are reasonable and necessary, a documented request for fees may not be defeated simply by a claim of excessiveness. Indeed, the record of the parties' fee litigation shows that both sides expended considerable and relevant effort to illuminate for the court's benefit the multiple issues pertaining to Andersen's fee petition. Accordingly, Atlantic Recording's request to reduce by 48.45% the 107.6 hours spent pursuing an award of fees in this matter should be denied.

B.    Hourly Rate

As set forth above, Andersen seeks "the reasonable hourly rates of $375 for partners [2], $250 for associates [4], and $150 for paralegals [4]." (Def.'s Mem. Supp. 4.)  Atlantic Recording challenges the requested hourly rates as unreasonably high and not in accordance with the record in this case or applicable case law.

The law is well-established that the reasonable rate for legal services is to "be calculated according to the prevailing market rates in the relevant community." *Blum v. Stenson,* 465 U.S. 886, 895 (1984). A reasonable hourly rate is determined by looking at the prevailing rate in the relevant community for similar work performed by attorneys of comparable skill, experience, and reputation. *See Barjon v. Dalton,* 132 F.3d 496, 502 (9th Cir. 1997); *see also Welch v. Metro. Life Ins. Co.,* 480 F.3d 942 (9th Cir. 2007) (district court abused its discretion in ERISA case when it awarded attorneys' fees at a rate of $250.00/hour, even though the only evidence in the record indicated that attorneys in relevant legal market charged $375.00-$400.00/hour for similar work). "The fee applicant has the burden of producing satisfactory evidence, in addition to the affidavits of its counsel, that the requested rates are in line with those prevailing in the community for similar services of lawyers of reasonably comparable skill and reputation." *Jordan v. Multnomah County,* 815 F.2d 1258, 1263 (9th Cir. 1987). "Affidavits of the [prevailing] attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the plaintiff's attorney, are satisfactory evidence of the prevailing market rate." *United Steelworkers of America v. Phelps Dodge Corp.,* 896 F.2d 403, 407 (9th Cir. 1990).

The best evidence of the prevailing rate in Portland, Oregon, is the 2007 Economic Survey ("Economic Survey") conducted by the Oregon State Bar. *See, e.g., Roberts v. Interstate Distributor Co.,* 242 F.Supp.2d 850, 857 (D. Or. 2002) (referencing 2002 Economic Survey); <u>see also</u> Message from the Court Regarding Attorney Fee Petitions, available at: http://www.ord.uscourts.gov, at 2 (same).[6] As Chief Judge Haggerty recently stated, the Oregon State

---

[6] Based on the billing records submitted – September 2005 thru January 2008 – the court determines that the 2007 Economic Survey is the appropriate benchmark here.

Bar's 2007 Economic Survey "is a bellwether for the market price of attorney services in Portland, and the court affords it significant weight in at least establishing a starting point for reasonable rates." *McElmurry v. U.S. Bank Nat'l. Assoc.*, No. 04-642-HA, 2008 WL 1925119, at *3 (D. Or. April 30, 2008).

The pertinent hourly wage data for attorneys based on years of practice in relevant community set forth in the Economic Survey are summarized below:

| Years | Average | 25th Percentile | 75th Percentile | 95th Percentile |
|-------|---------|-----------------|-----------------|-----------------|
| 0-3   | $177    | $162            | $190            | $216            |
| 4-6   | $188    | $170            | $210            | $240            |
| 7-9   | $239    | $200            | $275            | $360            |
| 16-20 | $267    | $200            | $325            | $387            |
| 21-30 | $277    | $225            | $325            | $399            |

Although Lybeck, Andersen's lead counsel, acknowledges the Economic Survey "as an initial benchmark in setting reasonable hourly rates . . . pursuant to Local Rule 54.3," he contends that a higher rate is appropriate here. (Lory Lybeck Decl. ¶ 12, Jan. 24, 2008.) Lybeck states that the "[Economic] Survey does not show hourly rates from attorneys practicing in the area of copyright litigation, a unique and complex area of law in which practioners often charge higher hourly rates." (Lybeck Decl. ¶ 17, Jan. 24, 2008.) Lybeck instead relies on the results of a survey developed and conducted by the Law Practice Management Committee of the American Intellectual Property Law Association ("AIPLA"). (Lory Lybeck Decl. Ex. A (AILPA excerpts), March 11, 2008.) The AIPLA survey reports the annual incomes and related professional and demographic characteristics of intellectual property ("IP") law attorneys and associated patent agents. Lybeck concludes that "[b]ased on an informal survey and the [AIPLA] survey, hourly rates of $400 are regularly charged by experienced partners practicing in this region in the area of copyright litigation. Charges of $375

per hour for an experienced partner litigator in a copyright litigation case are well within the range of normal and reasonable." (Lybeck Decl. ¶ 4, March 11, 2008.)

The AIPLA survey is insufficient evidence of the requested hourly rates. First, there is no evidence in the record regarding the years of experience for any of Andersen's attorneys in the area of IP or copyright law, much less evidence of IP expertise such that the AIPLA survey is the superior measure. Additionally, even assuming that some or all of the attorneys here can show IP/copyright proficiency such that the AIPLA survey is relevant, there is no evidence in the record regarding the number of years of IP experience for individual attorneys. To be entitled to the $250 rate requested here for all of the associate attorneys, there must be evidence of five-to-six years of IP experience, and the $375 rate for the partners requires 15-24 years of IP experience. In fact, in some instances, Andersen requests rates well above the average billing rate for attorneys with similar experience as listed in the AILPA survey. For example, associate attorney Justus, who has billed nearly half of the total requested hours, began practicing law three years ago. (Lybeck Decl. ¶ 6, Jan. 24, 2008.) Andersen seeks an hourly rate of $250.00 for Justus, yet under the AIPLA survey, an attorney possessing four years or less of IP experience billed at the median rate of $200 per hour. Finally, the AIPLA survey excerpts submitted to this court do not account for the relevant community, Portland.

This district has made clear to attorneys that they "may argue for higher rates based on inflation, specialty, or any number of other factors, " but that fee petitions must "address the Economic Survey and provide justification for requested hourly rates higher than reported by the Survey." Message from the Court Regarding Attorney Fee Petitions, available at: http://www.ord.uscourts.gov, at 2. Andersen has not addressed the Economic Survey and has not provided justification for the higher hourly rates she seeks. Without the proper documentation, there is no

basis to conclude that the AIPLA survey should replace the Economic Survey as the "bellwether" for the market price of attorney services in Portland. Accordingly, the court will rely on the Economic Survey to set the rates for the attorneys in this case.

Applying the rates from the Economic Survey, the hourly rates for Andersen's attorneys are as follows:

| Attorney/Experience | Requested Rate | Awarded Rate (75th Percentile) |
| --- | --- | --- |
| Lory R. Lybeck/24 | $375 | $325 |
| James P. Murphy/19 | $375 | $325 |
| Katherine L. Felton/7 | $250 | $275 |
| Brian T. Hodges/6 | $250 | $210 |
| Brian C. Armstrong/6 | $250 | $210 |
| Benjamin R. Justus/3 | $250 | $190 |

Andersen's request for an hourly rate of $250 per associate and $375 per partner should be modified in accordance with the rates set forth in the table above.

The court's use of the 75th percentile rates in the Economic Survey for Andersen's attorneys is consistent with the result reached in *McElmurry*. There, Judge Haggerty applied the Economic Survey's 75th percentile hourly rate notwithstanding plaintiffs' attorneys' argument that they were entitled to higher hourly rate and a 1.5 multiplier because they were "specialists" in their field and their experience "command[ed] a premium." 2008 WL 1925119, at *1, *3. Here, Andersen's attorneys fell short of the evidence of expertise that Judge Haggerty rejected in *McElmurry*, as she provided no evidence that her attorneys possessed expertise, specialized knowledge, or experience in IP law.[7]

---

[7] The court also notes that Andersen premised much of her hourly rate argument on the outdated data contained in the 2002 Economic Survey. (Lybeck Decl. ¶¶ 12-15 Jan. 24, 2008.) The court's use of the 2007 Economic Survey to evaluate Andersen's attorney fee request moots this aspect of Andersen's argument.

And, as Atlantic Recording points out (Pls.' Sur-Reply 8), Andersen's attorneys' website provides further support for this conclusion. Neither copyright nor intellectual property law is listed among the services offered under "Firm Profile & Services," the biographical descriptions for the two most senior attorneys who worked on Andersen's case do not list copyright or intellectual property law among their experience, and two of the three remaining attorneys for whom Andersen seeks fees do not identify intellectual property or copyright law in their practice emphasis descriptions. (Lybeck Murphy Lawyers, available at http://www.lybeckmurphy.com/index.html (last visited May 12, 2008). The third remaining attorney, associate attorney Justus, is not listed on the firm's website but, accordingly to Andersen's fee petition materials, has only three years of experience. Any assertion that he possesses expertise that warrants departing from the Economic Survey or adopting the AIPLA standard would be without basis on this record; Judge Haggerty rejected in *McElmurry* a claim for enhanced hourly rates for junior attorneys "whose claim to expertise in a particular field in the first few years of years of practice is dubious." 2008 WL 1925119, *3. For this additional reason, the Economic Survey's 75 th percentile hourly rate is an appropriate standard with which to measure Andersen's attorney fee request.

Finally, the court will consider the requested rate of $150 per hour for the paralegals. Andersen provides no evidence in support of her request for $150 per hour. Indeed, this court is left to speculate as to the experience and expertise of the paralegals because Andersen provides no information about their training and experience. Conversely, Atlantic Recording provides at least some, albeit conclusory, evidence that "$100 per hour is the appropriate lodestar rate for the defense team paralegals." (Markowitz Decl. ¶ 8.) In the absence of better evidence, the court sets the paralegal rate in this case at $120 per hour. *See MW Builders Inc., et al. v. SAFECO Ins. Co. of*

*America, et al.*, No.02-1578-AS (Findings and Recommendation filed Feb. 14, 2006) (court granted unopposed request for paralegal rate at $125 hour); and *Megavail Inc., et al. v. Illinois Union Ins. Co.*, No. 05-1374-AS, 2007 WL 3232605, at *4 n.2 (D. Or. Nov. 1, 2007) (court granted unopposed request for paralegal rate between $120-$125 per hour). Accordingly, Andersen's request for a paralegal hourly rate of $150 per hour should be modified to $120 per hour.

C.    Multiplier

Andersen requests as "appropriate and necessary" a multiplier of two based upon the substantial risks of pursuing this case; the significant time, money, and resources expended; and the novelty and complexity of the issues in this case. (Def.'s Mem. Supp. 4-5.) Atlantic Recording disputes that Andersen is entitled to a multiplier here. Atlantic Recording contends that "this matter, which did not proceed to trial, involves a single, straightforward claim of copyright infringement, and an equally simple defense of 'I didn't do it.'" (Pls.' Br. 18.) Additionally, Atlantic Recording argues that the factors relied upon by Andersen in support of her request for a multiplier have already been accounted for in the initial lodestar calculation and, as such, she has failed to carry her burden with respect to the application of a multiplier. *See, e.g., Blum*, 465 U.S. at 898-99 (novelty and difficulty of issues are inappropriate factors to use in enhancing a fee award, because they are already accounted for in the rate used to compute the lodestar amount.).

In *Blum*, the Supreme Court rejected the district court's conclusion that an upward adjustment was appropriate because of "the complexity of the litigation, the novelty of the issues, the high quality of representation, the 'great benefit' to the class, and the 'riskiness' of the law suit." *Id.* The Court explained that the novelty and the complexity of the issues were considered in the number of billable hours reported by counsel. *Id.* at 898. Additionally, the special skill and

experience of counsel as well as the quality of representation are factors ordinarily reflected in the reasonable hourly rate. *Id.* at 898-99. Finally, the result obtained or outcome of the litigation "generally will be subsumed within other factors used to calculate a reasonable fee, [and] . . . normally should not provide an independent basis for increasing the fee award." Id. at 900. Thus, the Court limited the recovery of an upwardly adjusted attorney's fee award or an enhanced award to rare, exceptional cases. *Id.* at 897-99.

Based on Andersen's request of a two multiplier, the court must consider whether the lodestar amount is unreasonably low and whether under the circumstances this is a "rare" or "exceptional case" supporting an upward adjustment to that lodestar amount. *Id.; see also Van Gerwen*, 214 F.3d at 1045 ("The lodestar amount is presumptively the reasonable fee amount, and thus a multiplier may be used to adjust the lodestar amount upward or downward only in 'rare' and 'exceptional' cases, supported by both 'specific evidence' on the record and detailed findings by the lower courts that the lodestar amount is unreasonably low or unreasonably high."). When considering whether to adjust upward the lodestar amount to determine a reasonable amount in fees, the court should consider whether there were exceptional results. Indeed, the result achieved is a significant factor to be considered in making a fee award. *Hensley*, 461 U.S. at 436 (emphasizing that the "most critical factor is the degree of success obtained"); *Blum*, 465 U.S. at 900-01 (multipliers should be awarded only in "'some cases of exceptional success'" (quoting *Hensley*, 461 U.S. at 435)).

Here, the parties entered a Notice of Stipulated Dismissal, by which Atlantic Recording dismissed, with prejudice, its copyright infringement action against Andersen. On its face, the dismissal does not include any concessions or obligations on the part of Atlantic Recording, although Andersen also dismissed her counterclaims, without prejudice, and now pursues them in a separate

action. *See Andersen v. Atlantic Recording, et al.*, No. 07-934-BR (D. Or. March 31, 2008 and April 21, 2008)(Scheduling Order and Scheduling Conference). Although the dismissal of the copyright infringement claim is certainly a significant outcome for Andersen, the court is unable to conclude that the dismissal of the single copyright infringement claim in this case constitutes an "exceptional" or "rare" result within the meaning of the controlling case law. While the dismissal vindicates Anderson personally, Atlantic Recording has a legal right to protect its interests and pursue remedies against those it legitimately believes are violating the copyright laws to Atlantic Recording's detriment. Based on the results achieved by Andersen in this litigation, the court finds that this factor weighs against granting counsel a multiplier of two.

In his declaration, Lybeck states that a multiplier is warranted because of "the risk involved in pursuing the defense of this difficult and complex matter together with the unreasonable conduct and 'bad faith' of plaintiffs in their handling of the case warrant a multiplier of 2 times the stated hourly rates." (Lybeck Decl. ¶ 19, Jan. 24, 2008.). With respect to the risk involved in this case, the second and third *Kerr* factors – the novelty and difficulty of the issues and the skill requisite to perform the legal service properly – account for Lybeck's efforts in that regard. *See Kerr*, 526 F.2d at 70; *see also Stewart v. Gates*, 987 F.2d 1450, 1453 (9th Cir. 1993) (referring to a fee enhancement the Ninth Circuit stated that "in carrying this heavy burden, the applicant may not rely on many of the *Kerr* factors"). Nor does a claim of "bad faith," without more, support a request for a multiplier.

Andersen also claims that "Oregon courts routinely award a multiplier on an attorney fee award for high risk, successful claims such as this," (Def.'s Mem. 4.), but the three cases she relies on do not support her contention. For example, Andersen cites *Skou v. Pacific Intern. Pipe Enterprises, Inc.*, No. 97-477-FR, 2000 WL 748111 *1-*2 (D. Or. 2000), where the court used a 1.5

multiplier in awarding attorney fees. However, the court based its application of a multiplier on state law and cited factors not applicable under federal law. The other two cases Andersen cites also rely on state law and are similarly distinguishable. Moreover, Andersen prevailed on the main claim here, Atlantic Recording's copyright claim against her based on federal law, and that federal statute's attorney fee provision, not state law, controls the award of attorney fees here.

Finally, Lybeck argues that a multiplier is warranted because "the record of [his] true efforts is incomplete" and a multiplier, along with the requested fees, is needed because "the fees actually documented by the true billings . . . truly understate the time and costs actually incurred." (Lybeck Decl. ¶ 21, Jan. 24, 2008.) Based on a review of the relevant case law, the court concludes that under-billing or a failure to accurately track time expended is not a basis for finding a rare or exceptional case such that a multiplier is justified. As noted previously, the rule in this district is clear and is consistent with Ninth Circuit authority: attorneys fee requests must be supported by sufficient and detailed documentation. The court cannot retroactively supply or assume the supporting detail that Lybeck failed to preserve as he litigated Andersen's defense.

D.     Fees Awarded

Based on the foregoing discussion regarding the number or hours reasonably expended on the litigation, the reasonable hourly rates, and the application of a multiplier, attorney fees should be awarded in the amount of $103,175. The court's lodestar calculations are summarized as follows:

| Name | Rate | Hours Requested | Hours Permitted | Total |
|------|------|-----------------|-----------------|-------|
| Lybeck | $325 | 105.7 | 87.1 | $28,307.50 |
| Murphy | $325 | 23.2 | 23.2 | $ 7,540.00 |
| Felton | $275 | 1.1 | 1.1 | $    302.50 |
| Hodges | $210 | 137.2 | 121.9 | $25,599.00 |

| | | | |
|---|---|---|---|
| Armstrong | $210 | 10.0 | 9.9 | $ 2,079.00 |
| Justus | $190 | 236.3 | 202.1 | $38,399.00 |
| Paralegals | $120 | 33.4 | 25.5 | $ 948.00 |

## II. Bill of Costs

Andersen submitted a Bill of Costs seeking $5,387.05 for the following expenses: various photocopies, video duplication, Westlaw research, UPS delivery, a court reporter, an application fee for admission *pro hac vice*, and mileage. Atlantic Recording objects to Andersen's requested costs in their entirety for failure to submit the required documentation. Alternatively, Atlantic Recording argues that even if the court finds that Andersen submitted sufficient support for her cost bill, the majority of items for which she seeks an award are non-compensable; namely, video duplication, Westlaw research, and UPS delivery. According to Atlantic Recording, none of these items are included under 28 U.S.C. § 1920 and, therefore, Andersen's request for costs on these items must be denied.

Here, in support of her Bill of Costs, Andersen provided an itemization, including the total amount sought for each requested category of expense, a breakdown of the expenses that comprised a particular category, and the date the costs were incurred. (Lybeck Decl. Ex. C at 25, Jan. 24, 2008.) Additionally, Lybeck affirmed that: "Each of the items set forth in the Bill of Costs are correct and have been necessarily incurred in this case. Each of the services for which costs have been charged was actually and necessarily performed." (Lybeck Decl. ¶ 23, Jan. 24, 2008.) The court is satisfied that Andersen has properly verified the cost bill in accordance with the requirements of LR 54.1, and turns to the specific items.

Atlantic Recording challenges Andersen's costs as non-compensable, the Ninth Circuit has held that in copyright actions "district courts may award otherwise non-taxable costs, including those

Page 30 - FINDINGS AND RECOMMENDATION                                    [LB]

that lie outside the scope of § 1920, under § 505." *Twentieth Century Fox Film*, 429 F.3d at 884-85.

*Accord Invessys, Inc. v. McGraw-Hill Cos., Ltd.*, 369 F.3d 16, 22 (1st Cir. 2004) (holding that costs of electronic legal research, costs not enumerated as taxable under § 1920, are nevertheless reimbursable under § 505); *Coles v. Wonder,* 283 F.3d 798, 803 (6th Cir. 2002) (affirming award of non-taxable costs under § 505 without discussion); *Susan Wakeen Doll Co. v. Ashton Drake Galleries*, 272 F.3d 441, 458 (7th Cir. 2001) ("[A]ny award of fees and non-taxable costs must come through [§ 505], and not through the general cost provisions of 28 U.S.C. § 1920."). Thus, the holding in *Twentieth Century Fox* clearly allows district courts to award costs to a prevailing party under § 505 that are not otherwise ordinarily recoverable under § 1920.

Turning to the specific items in Andersen's cost bill, over seventy percent, $3,863.37, of the claimed costs in this case consists of charges for Westlaw on-line research. In this circuit, charges for computer-assisted legal research are recoverable as costs if they are ordinarily billed to clients separately. *See, e.g., Trustees of Const. Industry and Laborers Health and Welfare Trust v. Redland Ins. Co.*, 460 F.3d 1253, 1258-1259 (9th Cir. 2006) (if ordinarily billed to clients separately, online research recoverable as part of attorney fees); *see also Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 369 F.3d 91, 98 (2d Cir.2004) ("If [the firm] normally bills its paying clients for the cost of online research services, that expense should be included in the fee award."); *Invessys, Inc.*, 369 F.3d at 22 (""[C]omputer-assisted research should be . . . reimbursed under attorney's fee statutes . . . so long as the research cost is in fact paid by the firm to a third-party provider and is customarily charged by the firm to its clients as a separate disbursement."). Lybeck represents that this legal research cost was conducted through Westlaw, and was "charged" and

"actually and necessarily performed." (Lybeck Decl. ¶ 23 Jan. 24, 2008; Bill of Costs 2). Accordingly, Andersen's request for Westlaw charges here are compensable.

As to the remaining items in Andersen's cost bill, Andersen may recover costs to obtain a copy of her deposition. *See Corridean v. Restore Financial Services Network, LLC*, No. 06-524-HU, 2007 WL 1989622, *4 (D. Or. July 6, 2007)(use of a deposition at trial not a prerequisite for finding cost for deposition was necessary). Regarding mileage, "[g]enerally, the cost of travel of a party is not a recoverable cost," *Banta*, 2007 WL 3543445, *5, and neither the cost bill nor Lybeck's declaration specify by whom this item of cost was incurred. Therefore, the court denies this item. The court also denies Andersen's request for "various photocopies" and "video duplication," as it is impossible to determine from either the cost bill or Lybeck's declaration whether and what portion of these copies were necessarily obtained for use in this case and what portion were for the convenience of the attorneys. *See Symantec Corp. v. CD Micro, Inc.*, No. 02-406-KI, 2005 WL 1972563, *5 (D. Or. Aug. 12, 2005)(in Copyright Act case, denying copy costs due to absence of documentation explaining purpose for which copies were made). Similarly, the court cannot determine the purpose for which Andersen incurred the claimed *pro hac vice* fee and, in light of the fact that both senior attorneys on the case, Lybeck and his partner, James Murphy, are members of the Oregon Bar, how that special admission was necessary here. Therefore, the court denies this items of cost as well. The court allows the UPS delivery charge because mailing expenses may be recovered if charged to the client, which Lybeck represents were charged here.

Accordingly, Andersen's Bill of Costs should be approved in the amount of $4,659.

*Conclusion*

Based on the foregoing, Andersen's Motion to Fix Amount of Attorney's Fees (doc. #159) should be GRANTED, in part, and DENIED, in part as follows:  Andersen should be awarded attorney fees in the amount of $103,175.  Andersen's Bill of Costs (doc. # 162) in the amount of $4,659 should be APPROVED.

*Scheduling Order*

The above Findings and Recommendation will be referred to a United States District Judge for review.  Objections, if any, are due **May 27, 2008**.  If no objections are filed, review of the Findings and Recommendation will go under advisement on that date.  If objections are filed, a response to the objections is due fourteen days after the date the objections are filed and the review of the Findings and Recommendation will go under advisement on that date.

DATED this day of May, 2008.

John V. Acosta
United States Magistrate Judge